In re Craig Lee BOESE, Debtor.

James MANN and Barbara Mann, Plaintiffs,

v.

Craig BOESE, d/b/a Craig Boese Construction Company, Defendant.

Bankruptcy No. 480–00090.
Adv. No. 480–0085.

United States Bankruptcy Court,
D. South Dakota.

Feb. 5, 1981.

Stanley E. Whiting, Day, Grossenburg & Whiting, Winner, S. D., for plaintiffs.

Joe W. Cadwell, Cadwell, Brende & Sanford, Sioux Falls, S. D., for defendant.

PEDER K. ECKER, Bankruptcy Judge.

This matter is before the Court on a Complaint to Determine Dischargeability of a debt filed by James and Barbara Mann, Creditors, against Debtor. Based on the pleadings, the hearing held by the Court at which Counsel presented extensive evidence, and the briefs supplied by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FACTS

Debtor, a young building contractor, in the fall of 1979, entered into a contract with Creditors to build a log house for the price of $21,900.00. Creditors paid Debtor $3,000.00 down at the execution of the contract or shortly thereafter so that Debtor could establish a line of credit and purchase needed supplies. Debtor was to supply all materials needed for the job.

Creditors made $3,000.00 payments each week to Debtor during the construction period. Due to adverse weather, the failure of Creditors to have a tractor available as promised, and other problems that caused delays, Debtor had to terminate construc-

tion in early December of 1979 without having finished the house. Due to the delays Debtor incurred additional expenses that he had not planned for.

On December 13, 1979, Debtor stopped at the home of Creditors and requested final payment. At this time, Creditors were aware that Debtor had not paid one of the suppliers in Burke, South Dakota. In the conversation between Debtor and Creditors on December 13, 1979, Creditors specifically asked Debtor about payment to suppliers. Debtor told Creditors that he would go the next day to settle the bill with the supplier in Burke, South Dakota. Creditors wrote a check to Debtor for the final payment of $6,500.00.

The next day Debtor did go to Burke, South Dakota, to settle the bill but the person he had to deal with was not there. Debtor returned home. Debtor, who unsuccessfully attempted to borrow money from the bank to pay the suppliers, used the $6,500.00 to support the family during the winter.

In March of 1980 two suppliers filed mechanic's liens against the property on which Debtor had built the house for the amount of $12,641.06. Creditors commenced a state court lawsuit against Debtor for judgment in the amount owed to the suppliers and for the unfinished deck. Debtor filed a Chapter 7 bankruptcy petition, thus staying the lawsuit.

The original contract for putting the log house together contained a provision for a special trust fund. Creditors could have participated in the control of the fund had they chosen to use and rely upon it pursuant to the provision wherein the trust fund would be "subject to written approval of the owner". However, Debtor did not establish a special trust fund, with both Debtor and Creditors ignoring this provision and taking no steps to actually establish a special trust fund.

## ISSUES

(1) Whether Debtor obtained Creditors' money by actual fraud or by false represen-

tation so as to except the debt owed to Creditors from the discharge; and

(2) Whether Debtor acted in a fiduciary capacity and, if so, whether the debt is excepted from the discharge under 11 U.S.C. Section 523(a)(4).

*(1) False Representation or Actual Fraud*

11 U.S.C. Section 523(a)(2)(A) provides: "A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, . . .".

■ In order to prevail under 11 U.S.C. Section 523(a)(2)(A), a creditor must prove that a debtor knowingly and fraudulently made false representations to the creditor in order to obtain the creditor's money. Subsequent conduct contrary to a former representation by debtor does not necessarily establish the original representation to have been false. See 3 Collier on Bankruptcy, 15th Ed., Section 523.08(4) and *In Re Brooks*, 4 B.R. 237 (S.D.Florida 1980).

Here, the contract entered into between Debtor and Creditors provided that Debtor would pay the suppliers and that Debtor would establish a special trust fund. Creditors paid Debtor $3,000.00 per week before Debtor terminated the construction work.

■ This Bankruptcy Court holds that Debtor did not knowingly and fraudulently make false statements to Creditors in order to obtain Creditors' money. At the time Debtor entered into the contract, Debtor had every intention of building the house and paying off the suppliers. Due to poor management, Debtor exceeded his original costs for the project. However, at no time while Debtor was building the house did he take the $3,000.00 weekly payment with the intention of not paying the suppliers. Unfortunately, as things turned out, he was later unable to do so.

Further, at the time Debtor received the final payment from Creditors, he intended to pay the suppliers. He indicated that he would pay the supplier in Burke, South Dakota, the next day. He attempted to do so. At the time Debtor represented to Creditors that he would pay the Burke supplier the next day, he fully intended to do so. The fact that he later used the money for personal expenses does not bring his representation within the provisions of 11 U.S.C. Section 523(a)(2)(A).

■ Finally, this Court will disregard the special trust fund provision required by the contract. Reliance upon a debtor's statement is one of the elements that a creditor must prove. Here, both parties ignored the special trust fund provision. Clearly, Creditors did not rely upon this provision in the contract. A review of the cases cited by Creditors reveals that the cases all require the debtor to have knowingly, falsely, and fraudulently made the representations in order to obtain the creditor's money. In *Wells v. Blitch*, 182 Ga. 826, 187 S.E. 86 (1936), the Court stated that,

"A false representation may consist of obtaining the money of another upon the faith that it will be used for the purpose for which the trust was extended, when the person so entrusted with the money had no present purpose of using it for the purpose which he declared would be subserved, and in further contemplation of a fraud on bankruptcy."

This Bankruptcy Court would agree that if Debtor had induced Creditors to pay the money with no actual intention of using the money to pay the suppliers, that Creditors' debt should be excepted from the discharge. However, Debtor did not have the intent at the time he obtained the money to use the money for purposes other than what he had stated to Creditors.

*(2) Fiduciary Capacity*

11 U.S.C. Section 523(a)(4) provides in part:

"A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or a larceny;".

Again this Court would note that both parties ignored the contract provision requiring Debtor to set up a special trust fund. Creditors never insisted that Debtor do so. For purposes of this decision the Court will not find that the trust fund provision of the contract imposed a fiduciary relationship upon Debtor.

■ Further, the mechanic's lien laws in South Dakota are inapplicable for use by Creditors in establishing that a trust relationship existed. The South Dakota lien law relied upon by Creditors states that:

"Any contractor or subcontractor on any improvement of real estate, mines or public utilities within the purview of this chapter who, with intent to defraud shall use the proceeds of any payment made to him on account of such improvement by the owner of such real estate or person having the improvement made, for any other purpose than the payment for labor, skill, materials, and machinery contributed to such improvement while any account for such labor, skill, material or machinery furnished for such improvement up to the time of such payment remains unpaid, shall be guilty of larceny of the proceeds of such payment so made." SDCL 44–9–13.

Since this Court finds that Debtor had no intent to defraud Creditors, SDCL 44–9–13 is inapplicable.

■ This Court further finds that no special fiduciary relationship was established at the time Creditors paid Debtor the final payment. The mere fact that Debtor told Creditors that he would go to Burke, South Dakota, the next day and pay the supplier did not create a fiduciary relationship. This Court rejects Creditors' argument that more than a mere debtor-creditor relationship existed. This Court is of the opinion that that is exactly what existed.

## CONCLUSION

For the foregoing reasons this Bankruptcy Court holds that Creditors' debt is not excepted from the discharge.

Debtor's Counsel shall submit an Order consistent with the foregoing. This Decision shall constitute Findings of Fact and Conclusions of Law.