In re **Gary Wayne TODD, Debtor.**

**PEOPLES SECURITY FINANCE CO., INC., Plaintiff,**

v.

**Gary Wayne TODD, Defendant.**

**Bankruptcy No. 48100427.**
**Adv. No. 4820006.**

United States Bankruptcy Court, W.D. Kentucky.

Nov. 21, 1983.

---

Sandra D. Freeburger, Sebree, Ky., for plaintiff.

Hugh Bishop, Louisville, Ky., for debtor.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Gary Wayne Todd filed a Chapter 7 petition on December 10, 1981, and in his schedule of assets and liabilities listed an unsecured debt of $2,400 to Peoples Security Finance Co., Inc. Peoples Security challenges the dischargeability of that debt, claiming that the debtor committed actual fraud in obtaining a release of its lien on a

motorcycle by promising to grant immediate replacement collateral.[1]

By agreement the parties have dispensed with an evidentiary hearing and have submitted the matter for decision on briefs and uncontested facts revealed during discovery.

On August 22, 1980, Todd executed a promissory note in the amount of $2,471.05 to Peoples, secured by a motorcycle. Desiring to sell the encumbered cycle, Todd approached the creditor on March 17, 1981 to obtain a release of its lien. According to Todd, he offered Peoples a security interest in a car his parents had previously given him, and also to make two or three advance payments on his loan. He promised to bring the money and the car title immediately after the sale. According to Peoples, the lien release was a temporary accommodation, to enable Todd to sell the motorcycle and purchase a car simultaneously. He was to return with the title to the car purchased and $1,000 on account.

The amount to be paid to Peoples and the precise details of the courthouse transaction are not determinative of the present challenge.

Both parties agree on the crucial facts: Peoples released its lien on the motorcycle to facilitate the sale, and Todd promised to immediately deliver a car title for recordation of their lien. Termination of the lien occurred at 11:00 A.M. on March 17. Todd did not return with the title, and no further payments have been made. Instead, Todd left town early the next morning, sale proceeds in hand.

We must decide whether these facts establish the existence of the kind of debt excepted from discharge under Section 523 of the Bankruptcy Code. That section enumerates nine types of nondischargeable debts; Plaintiff suggests that Todd's indebtedness fits within § 523(a)(2)(A) or § 523(a)(6).

Debts for obtaining money, property or services, or an extension, renewal, or refinancing of credit by false pretenses or representations or actual fraud, are excepted from discharge under § 523(a)(2)(A). This provision seeks to prevent the debtor from retaining benefits acquired by fraudulent means.

There is no doubt that property was obtained, a motorcycle. By obtaining the lien release, Todd acquired full rather than encumbered title to the machine.

Having established that the debtor obtained property through a breach of promise, we must consider whether Todd's actions amounted to a false pretense, false representation or actual fraud as proscribed by § 523(a)(2)(A).

False representations and false pretenses encompass statements that falsely purport to depict *current or past facts*.[2] Todd's promise—to pay Peoples $1,000 and to give it a lien on the car—related to his *future action* and did not purport to depict current or past fact, and therefore cannot be defined as a false representation or a false pretense.

The remaining basis for objection, also asserted by Peoples, is that Todd is guilty of actual fraud. In order to prevail on this ground the creditor must show something more than fraud implied in law; moral turpitude or an intentional wrong are necessary.

Actual fraud includes any "deceit, artifice, trick or design . . . used to cheat another—something said, done or omitted with the design of perpetrating . . . a cheat or deception."[3] Five elements comprise this offense: (1) The debtor made the representation; (2) The debtor knew the representations to be false at the time made; (3)

---

1. Plaintiff's complaint does not cite a statutory basis, but the accompanying Bankruptcy Cover Sheet required by our Clerk of Court indicates actions under § 523(a)(2) and (6).

2. Black's Law Dictionary 541 (Rev. 5th Ed. 1979); *In re Simpson*, 29 B.R. 202 (Bkrtcy.N.D.

Iowa 1983); *Matter of Shepherd*, 13 B.R. 367 (Bkrtcy.S.D.Ohio 1981); *In re Buttendorf*, 11 B.R. 558 (Bkrtcy.Vt.1981).

3. Black's Law Dictionary, 595 (Rev. 5th Ed. 1979).

The representations were made with the intention of deceiving the creditor; (4) The creditor relied on such representations; and (5) The creditor sustained loss and damage as the proximate result of the representations having been made.[4] These elements must be proven by clear and convincing evidence.[5]

■ The circumstances surrounding the lien release by Peoples do suggest that Todd's promise *could* satisfy the legal description of fraud, although generally a mere breach of a promise to pay will not support a finding of fraud.[6] Nevertheless, we conclude that Peoples' objection cannot be sustained under § 523(a)(2)(A).

The procedural posture of this case is important. We decide this matter with only the aid of two depositions, a court record, and briefs from counsel. The creditor's burden in this instance is insignificant. We have carefully read both depositions, the debtor's and that of the representatives of Peoples. Yet, on this sparse record, and without assessing the credibility of the witnesses, we cannot conclude that Peoples has proven the crucial intent element by clear and convincing evidence.

Peoples has established a prima facie, but circumstantial, case on the intent issue, through the time of the termination, the immediacy of Todd's move, and the subsequent failure to remit title or money by mail.

Todd's deposition does, however, contain a possible explanation of his conduct. He was involved with the buyer until late in the afternoon. Thereafter he did not immediately mail the title to Peoples because he did not want to drive the new car without the title in his possession. Finally, he testified that he did not make the promised payments because he did not get a job which had been promised him in his new place of residence, and had to use the sale

proceeds for necessities during a four-month period.

■ Whether Todd intended to deceive Peoples when he made the lien release arrangements on March 17 is a factual determination which is intrinsically ill-suited to summary treatment. We find that the intent evidence is in a state of pure equilibrium. Counsel for Peoples accurately summarized our evidentiary predicament: "The Defendant/Debtor's failure to take the certificate of title by the Plaintiff/Creditor's place of business (when the records indicate that he had ample time to do so) allowing the Plaintiff to note its lien on said automobile clearly *implies* that the Defendant/Debtor had no intention of allowing the Plaintiff/Creditor to perfect its lien." (Brief pp. 6–7, emphasis added.)

The implication is there, but an equally clear and opposite implication may be derived from Todd's testimony. Without credibility readings, we have no reason to believe one party more than the other, and no basis on which to choose. Therefore, we conclude that on this record, the creditor has not carried its burden of proving the essential element of fraud by clear and convincing evidence.

As noted earlier, Peoples also suggested a claim under § 523(a)(6) on the cover sheet of its complaint. This section makes nondischargeable debts that arise from willful and malicious injury by the debtor.

Peoples § 523(a)(6) objection did not go beyond the cover sheet, which is nothing more than an internal control document, and was not developed in its brief. We presume the basis of its claim was conversion by the debtor: Todd sold a motorcycle in which Peoples had a security interest and did not properly apply the sale proceeds.

■ We question the basic premise that Todd was a converter, but dismiss this claim

---

4. *In re Vissers*, 21 B.R. 638 (Bkrtcy.E.D.Wis. 1982); *In re Roberto's, Inc.*, 18 B.R. 551 (Bkrtcy.S.D.Fla.1982); *In re Witt*, 13 B.R. 848 (Bkrtcy.W.D.Va.1981).

5. *In re Tomeo*, 1 B.R. 673 (Bkrtcy.E.D.Pa.1979).

6. *In re Simpson*, 29 B.R. 202 (Bkrtcy.N.D.Iowa 1983); *In re Boese*, 8 B.R. 660 (Bkrtcy.S.D. 1981); *In re Brooks*, 4 B.R. 237 (Bkrtcy.S.D.Fla. 1980).

for other reasons. Conversion involves the exercise of the right of ownership over property *belonging to another.* With the termination of Peoples' lien, Todd was the true and only owner of the motorcycle. Consequently, its subsequent sale did not, and could not, interfere with the rights of another owner.

Even if we assume that conversion did occur, Peoples has failed to establish a § 523(a)(6) claim because it has not proven a *willful and malicious* injury. This provision does not except from discharge mere technical conversions which arise when sale proceeds from encumbered property are not forwarded to the creditor. To hold such a debt nondischargeable we must have proof of a willful and malicious intent.[7] Peoples has offered no evidence of willful and malicious intent, and we are hesitant to upgrade what may not even be a technical conversion to the level of a willful and malicious injury.

In summary, this case may suggest to secured lenders the prudence of obtaining full satisfaction contemporaneously with the execution of a release of lien.

Because Peoples has been unsuccessful in its objections to the discharge of its debt under either § 523(a)(2)(A) or § 523(a)(6) we hereby dismiss its complaint and declare Todd's $2,400 indebtedness to Peoples discharged under § 727.

---

**7.** *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935); *In re Simpson,* 29 B.R. 202 (Bkrtcy.N.D.Iowa 1983); *In re Marshall,* 24 B.R. 105 (Bkrtcy.W.D.Mo.1982); *In re Ayers,* 25 B.R. 762 (Bkrtcy.M.D.Tenn. 1982). Collier on Bankruptcy ¶ 523.16 at pp. 126–7 (15th Ed.1982).