In re Wayne S. ROEDER, Rosaline Carol Roeder, Debtors.

Don C. KEELING, Plaintiff,

v.

Wayne S. ROEDER and Rosaline Carol Roeder, Defendants.

Bankruptcy No. 38400808.
Adv. No. 3850034.

United States Bankruptcy Court,
W.D. Kentucky.

May 22, 1986.

Joseph J. Golden, Louisville, Ky., for plaintiff.

Louis M. Nicoulin, Louisville, Ky., for defendant/debtor.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Drinks are easier to mix than business and friendship, these litigants, former friends and barroom partners, have painfully learned. The lesson arises in the context of a nondischargeability complaint under the Bankruptcy Code.

\* \* \*

In late 1983 Wayne Roeder and Don Keeling opened a bar and lounge business known as "Captain Willys" under the corporate name of R & K Management, Inc. Roeder supervised the day-to-day operations and Keeling "handled the paper work." Management disagreements arose almost immediately, and in October, 1983, Keeling sold his interest to Roeder. In spite of their business differences Roeder and Keeling remained friends, and when Keeling left Capt. Willie's, it was just "breaking even."

Five months after he sold his interest in Capt. Willie's, Keeling was contacted by Roeder's wife, Carol. During their conversation Carol told him that Capt. Willie's was generally doing well, but that she and her husband were behind on several debts and needed money immediately. She said that she had called Keeling because she could not borrow the money elsewhere. Keeling agreed to meet Roeder at Capt. Willie's that night to discuss the loan.

During that meeting Roeder told Keeling, consistent with Carol's story, that Capt. Willie's was generally doing well, but there were several bills which needed to be paid immediately. The representations of Capt. Willie's financial condition, as it turned out, were not true; the bar had been recently losing money and Roeder needed cash to cover some bad checks.

The two men discussed the possibility of Keeling repurchasing a 50 per cent interest in Capt. Willie's for $5,000. Keeling declined the offer, but did agree to loan Roeder $5,000 if he and his wife would assign their 1983 federal income tax refund as collateral for the loan. Roeder agreed to that arrangement and Keeling gave him a check for $5,000 that night.

The following day the Roeders brought their tax papers to Keeling to verify the amount of their refund. They also offered to have their lawyer prepare a power of attorney. Keeling examined the papers and had *his own* lawyer prepare a power of attorney which would effectively transfer the Roeders income tax refund to him.

The Roeders repeatedly put off signing the power of attorney, and two weeks after the $5,000 loan was made, Roeder advised Keeling that he and Carol were having domestic problems and that Carol's attorney advised her not to sign anything. Keeling then returned the tax papers to the debtors without obtaining the signed power of attorney.

In April, 1984 the Roeders filed for protection under Chapter 13 of the U.S. Bankruptcy Code. At about the same time, R & K Management, Inc. d/b/a Captain Willie's filed a Chapter 11 case. Keeling's $5,000 debt was listed in R & K's petition as a business obligation but not in the debtor's Chapter 13 case. However, the debtors did propose to repay Keeling the $5,000 outside of the Chapter 13 plan. Their 1983 tax refund was to be used to repay other obligations. The debtors subsequently converted their Chapter 13 case to a Chapter 7 liquidation proceeding without repaying Keeling his $5,000, and the present § 523(a)(2)(A) action was brought

\* \* \*

The issue before us is whether the debtors obtained $5,000 from Keeling by "false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's ... financial condition".[1] In order for a party to succeed on a claim that a debt is nondischargeable under Section 523(a)(2)(A) it must prove its case by clear and convincing evidence.[2]

■ Initially, Keeling argues that the debtors made false representations when they agreed to turn over their 1983 income tax refund to him in return for his $5,000 loan. However, this court has previously held in the case of *In re Todd*,[3] that "false representations and false pretenses encompass statements that falsely purport to depict *current or past facts.* [A debtor's] promise ... related to [a] *future action*

[which does] not purport to depict current or past fact ... therefore cannot be defined as a *false representation or a false pretense*".[4] In this case Roeder promised to turn over the couple's joint 1983 income tax refund as security for the $5,000 loan. Since Roeder's promise related to a future action, the assignment of the income tax refund, his failure to carry out that promise is *not* a false representation or false pretense for purposes of Section 523(a)(2)(A).

■ The complaining creditor also asserts that the debtors should be denied a discharge because they are guilty of actual fraud.[5] Plaintiff's memorandum of law correctly quotes an exception to the general rule of the *Todd* case, that a cause of action for fraud will exist under 11 U.S.C. § 523(a)(2)(A) when a debtor makes promises of future action which, *at the time they were made,* he had no intention of fulfilling.[6] In order to succeed on this legal theory the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.[7]

■ Keeling proved that Roeder promised to sign over the tax refund as security for the loan; that the Roeders failed to give him the requested power of attorney; and that as a result of his reliance he

---

1. The evidence shows that Wayne misrepresented his financial situation and the profitability of Capt. Willie's to Don while attempting to gain an infusion of capital for his business. These false statements respecting the debtors financial condition do not render his obligation to Don nondischargeable since false statements concerning a debtors financial condition must be in writing in order for the debt to be nondischargeable. 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) (1984) *See also Engler v. Van Steinburg,* 744 F.2d 1060 (4th Cir.1984).

2. *In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985); *In re Brink,* 30 B.R. 28, 30 (Bkrtcy.W.D.Wis. 1983); *In re Aldrich,* 16 B.R. 825, 828 (Bkrtcy.W. D.Ky.1982).

3. 34 B.R. 633 (Bkrtcy.W.D.Ky.1983).

4. *Id.* at 635.

5. Actual fraud is defined as any "deceit, artifice, trick or design ... used to cheat another—something said, done or omitted with the design of perpetrating ... a cheat or deception." Black's Law Dictionary, 595 (Rev. 5th Ed.1979).

6. *In re Botten,* 54 B.R. 707, 709 (Bkrtcy.W.D. Wis.1985); *In re Shipe,* 41 B.R. 584, 586 (Bkrtcy. D.Md.1984).

7. *In re Botten,* 54 B.R. at 709; *In re Todd,* 34 B.R. at 636; *In re Vissers,* 21 B.R. 638 (Bkrtcy.E. D.Wisc.1982).

loaned $5,000 which has never been repaid. However, and of singular importance to our outcome, Keeling has *not* produced any evidence that at the time of the loan, the debtors did not intend to produce the promised security. In fact, the evidence before the court shows that the debtors brought their tax papers to Keeling to verify the amount of their 1983 refund and offered to have their lawyer draw up a power of attorney. Later the debtors testified that during a period of marital difficulties Mrs. Roeder was advised "not to sign anything." The debtors' testimony as to why they did not grant the necessary power of attorney was altogether credible.

It was the intervening marital discord, and not a preconceived design of fraud, that caused the failure of security and resulting loss on the loan. We conclude that Keeling has failed to meet his burden of proving by clear and convincing evidence an essential element of fraudulent intent, and therefore the nondischargeability complaint must fail. An order will be entered today dismissing the complaint with prejudice.