934 F.2d 689
 24 Collier Bankr.Cas.2d 2022, Bankr. L. Rep. P 74,051
In the Matter of Maurice L. BERCIER, M.D., Debtor.
BANK OF LOUISIANA, formerly Fidelity Bank and Trust Company, Appellee,
v.
Maurice L. BERCIER, M.D., Appellant.
 No. 91-3046
Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 July 3, 1991.
 
 Tom W. Thornhill, Thornhill & Associates, Slidell, La., for appellant.
 Sidney M. Bach, Gerald D. Wasserman, Bach & Wasserman, Metairie, La., for appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before KING, GARWOOD and DUHE, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 Maurice L. Bercier, M.D., appeals from a federal district court ruling that $50,000 of his debt to Bank of Louisiana is nondischargeable. The district court reversed the bankruptcy court's prior ruling that the debt was, in fact, dischargeable. For the reasons set forth below, we reverse the ruling of the district court.
 
 I. Background
 
 2
 Maurice L. Bercier, M.D. (Bercier) owned a fifty percent interest in Southeast Computed Tomography (S.E.C.T.). The Bank of Louisiana (BOL), formerly Fidelity Bank & Trust Company of Slidell, loaned $120,000 to S.E.C.T. in March, 1984. As collateral for the loan, Bercier placed a second mortgage on his office condominium valued at $60,000 and pledged his office accounts receivables valued at $40,000 and a $50,000 Nuveen Municipal Bond.[1] At the time of the loan, Bercier could not find the bond, but he agreed to deliver it to BOL when he located it. Later, at BOL's request, Bercier attempted to locate the bond several times, to no avail.
 
 
 3
 On July 20, 1985, S.E.C.T. defaulted on its note payments. BOL then foreclosed on the mortgage. The bank filed suit in state court seeking a deficiency judgment against Bercier. Bercier located the bond in October, 1985, having misplaced it in one of his patient's files. Bercier liquidated the bond on November 8, 1985, and placed the proceeds in an escrow account pending the outcome of settlement negotiations with BOL. After the negotiations failed but before resolution of the state court suit, Bercier spent the proceeds from the bond for his living expenses.
 
 
 4
 The bank obtained a deficiency judgment in state court against Bercier for $48,044.17 plus interest. Bercier then filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. 11 U.S.C. Sec. 701 et seq.
 
 
 5
 Shortly after Bercier's Chapter 7 filing, BOL filed a complaint under Sec. 523(a)(2) of the Bankruptcy Code[2] seeking to have its deficiency judgment against Bercier held to be nondischargeable based on misrepresentations allegedly made by Bercier in connection with the pledge of the bond. The bankruptcy judge, after a bench trial, found that the pledge of the bond was an accessory contract to secure the performance of another obligation. The court also found that the plaintiff, BOL, had the burden of proving the primary obligation on the debt for which the pledge was given. BOL failed to sustain its burden of proof, according to the bankruptcy court, because the judgment did not recognize the pledge as being collateral for the debt sued on. The court ruled that BOL's claim for the $50,000 bond was discharged, and that BOL owed Bercier interest, attorney's fees, and court costs.
 
 
 6
 The bankruptcy court further found, "in the event that this matter is appealed," that Bercier did not misrepresent any facts at the time the debt was purportedly entered; that he had lost the bond; that the validity of the pledge between pledgor and pledgee did not depend upon delivery; and that Bercier pledged the entire bond, not merely $20,000, and was under a duty to deliver it or a substitute. Finally, assuming that there was a note for which the pledge was given, the bankruptcy court found that Bercier's use of the bond proceeds constituted conversion and "would have been grounds" for declaring the $50,000 nondischargeable. No provision of the Bankruptcy Code was cited in the bankruptcy court's reasons for judgment.
 
 
 7
 BOL appealed the bankruptcy court's decision to the district court. At this point, BOL changed horses and based its brief on appeal on Sec. 523(a)(6) of the Bankruptcy Code,[3] not on Sec. 523(a)(2). Perhaps BOL, after considering the bankruptcy court's fact findings 'for the purpose of appeal' and Bercier's pretrial memorandum explaining why Sec. 523(a)(2) does not apply to those facts, decided to pursue another more promising route to victory at the appellate level. BOL's decision to base its brief to the district court on Sec. 523(a)(6) is understandable in light of the bankruptcy court's findings that the pledge was valid, that Bercier's use of the proceeds constituted conversion, and that conversion would be grounds for declaring the $50,000 nondischargeable. These findings are common in Sec. 523(a)(6) cases. See In re Valentine, 104 B.R. 67, 70 (Bankr.S.D.Ind.1988) ("[c]onversion of another's property will give rise to a nondischargeable debt under 523(a)(6) if the conversion is willful and malicious"); 3 Collier on Bankruptcy, 15th ed., Sec. 523.16 ("The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception.").[4] The problem with the newly-embraced route is that BOL's complaint in the bankruptcy proceedings is specifically predicated on Sec. 523(a)(2) and does not even mention Sec. 523(a)(6), and there is nothing in the bankruptcy court record suggesting that this was anything other than a Sec. 523(a)(2) case.
 
 
 8
 The district court accepted BOL's invitation to analyze this case under Sec. 523(a)(6) and, relying on Sec. 523(a)(6), reversed the decision of the bankruptcy court, declaring BOL's claim against Bercier to be nondischargeable, with court costs to be paid by Bercier. The district court, reviewing the record as a whole, held that BOL "did sustain its burden of proving that the bond was pledged to secure the note and that the judgment was based upon the defaulted note." To the extent that this holding overturned the bankruptcy court's conclusion that BOL had failed to prove the primary obligation on the debt for which the pledge was given, this holding is not challenged on appeal. The district court also held that "Bercier's use of the proceeds of the bond constituted an intentional act ... which caused willful and malicious injury" to BOL. The district court agreed with the bankruptcy court that the spending of the proceeds constituted conversion. Accordingly, the district court held that the $50,000 debt was nondischargeable under Sec. 523(a)(6).
 
 II. Standard of Review
 
 9
 "This court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, but the bankruptcy court's conclusions of law are subject to de novo review." Matter of Consolidated Bancshares, Inc., 785 F.2d 1249, 1252 (5th Cir.1986) (citations omitted). "Thus we will affirm the bankruptcy court's findings unless 'on the entire evidence, [this court is] left with the definite and firm conviction that a mistake has been committed.' " In the Matter of Sutton, 904 F.2d 327, 329 (5th Cir.1990) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).
 
 III. Discussion
 
 10
 As suggested by the factual scenario set forth above, the procedural history of the case is the key to the decision of this appeal. This case was originally filed under Sec. 523(a)(2) of the Bankruptcy Code. BOL alleged, in its complaint in the bankruptcy proceedings, that throughout its dealing with Bercier, "Bercier continued to represent to BOL that the bond was missing and therefore could not be handed over to the Bank, although in truth and fact, this was a misrepresentation of fact to BOL by Dr. Bercier...." BOL's complaint also treated Bercier's promise to deliver the bond as a representation and simply alleged that he "failed to live up to his representation[ ]."
 
 
 11
 Turning to the relevant portion of Sec. 523(a)(2), a debt for money or an extension, renewal or refinancing of credit is nondischargeable under this section of the Code to the extent it is obtained by false pretenses, a false representation or actual fraud. In order for Bercier's representation to be a false representation or false pretense under Sec. 523(a)(2), the "false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise ... related to [a] future action [which does] not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense." In re Roeder, 61 B.R. 179, 181 (Bankr.W.D.Ky.1986) (quoting In re Todd, 34 B.R. 633, 635 (Bankr.W.D.Ky.1983)). See 3 Collier on Bankruptcy 15th Ed., Sec. 523.08 ("A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach.").[5] The actual fraud component of Sec. 523(a)(2), insofar as it is relevant here, is explained by the Roeder court as follows:
 
 
 12
 a cause of action for fraud will exist under 11 U.S.C. Sec. 523(a)(2)(A) when a debtor makes promises of future action which, at the time they were made, he had no intention of fulfilling. In order to succeed on this legal theory, the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.
 
 
 13
 Roeder, 61 B.R. at 181.
 
 
 14
 The bankruptcy court and the district court both expressly found that Bercier did not misrepresent any facts when the debt was entered into. In the light of the way this case was pleaded and tried, we read these findings as encompassing the conclusion that Bercier's representation that he would deliver the bond was truthful when made. These findings are not clearly erroneous and are not challenged on appeal to this court. With these unchallenged fact findings, BOL could not establish that Bercier's debt is nondischargeable under Sec. 523(a)(2) because at the time the debt was entered into, Bercier did not make a false representation of a current or past fact when he said the bond was lost or a false representation or promise when he said that he would furnish it when he found it, or duplicate it if he could not find it. Thus in applying the findings of the bankruptcy court, as accepted by the district court, we hold that BOL failed to establish that Bercier's debt was nondischargeable under Sec. 523(a)(2).
 
 
 15
 We now turn to BOL's "claim" under Sec. 523(a)(6), argued for the first time in its appellate brief to the district court. Under Rule 4007(c) of the Bankruptcy Code, "[a] complaint to determine the dischargeability of any debt pursuant to Sec. 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to Sec. 341(a)." The Advisory Committee Note further explains that Rule 4007(c) imposes "a deadline for filing complaints to determine the issue of dischargeability of debts set out in Sec. 523(a)(2), (4) or (6) of the Code. The bankruptcy court has exclusive jurisdiction to determine dischargeability of these debts. If a complaint is not timely filed, the debt is discharged." Bankr. Rule 4007 advisory committee's note.[6]
 
 
 16
 In the instant case, the meeting of creditors pursuant to Sec. 341(a) took place on February 6, 1989, and BOL's complaint under Sec. 523(a)(2) was timely filed on March 1, 1989. However, BOL's arguments based on Sec. 523(a)(6) were first made on October 9, 1990, and then not in a pleading but in an appellate brief. In allowing BOL to prevail in its quest to have the judgment against Bercier held nondischargeable based on a provision of the Code not asserted in the complaint or litigated at trial, the district court in effect subverted the purpose of Bankruptcy Rule 4007(c) to require complaints for dischargeability under, inter alia, Sec. 523(a)(6) to be filed within sixty days after the Sec. 341(a) creditors' meeting.[7] In addition, Sec. 523(a)(6) requires a finding by the trier of fact of willful and malicious injury by the debtor, a finding not expressly made here by the bankruptcy court because BOL was proceeding under an entirely different section of the Bankruptcy Code at trial. We therefore decline the parties' invitation to decide whether Bercier's debt was dischargeable under Sec. 523(a)(6) by analyzing whether Bercier perfected his pledge of the bond or converted BOL's property under Louisiana law. The district court erred in allowing BOL to switch horses in midstream by changing this Sec. 523(a)(2) case into a Sec. 523(a)(6) case at the appellate stage.
 
 IV. Conclusion
 
 17
 For the foregoing reasons, we reverse the decision of the district court and hold, based on the bankruptcy court's findings of fact, that BOL failed to establish that Bercier's $50,000 debt is nondischargeable under Sec. 523(a)(2) of the Bankruptcy Code.
 
 
 18
 REVERSED.
 
 
 
 [1]
 According to Bercier's testimony before the bankruptcy court, during his negotiations with BOL, Bercier stated that he wanted only $20,000 of the bond to serve as collateral. This would mean the total value of the collateral would equal the total amount of the loan--$120,000. Bercier's testimony is supported by some of the witnesses; others simply did not recall. If, in fact, these were Bercier's intentions, they were never reduced to writing, and the bankruptcy court found the entire $50,000 bond to be collateral. This finding, accepted by the district court, is not clearly erroneous
 
 
 [2]
 Sec. 523(a)(2) states, in part:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 (A) false pretenses, a false representation, or actual fraud, other than a statement reflecting the debtor's or an insider's financial condition....
 
 
 [3]
 11 U.S.C. Sec. 523(a)(6) states:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....
 
 
 [4]
 We note that the testimony before the bankruptcy court regarding whether Bercier's pledge of the bond was valid and why he liquidated the bond and spent the proceeds when he did is germane to BOL's Sec. 523(a)(2) claim that Bercier made a misrepresentation of fact to the bank. Moreover, the liquidation of the bond and the spending of the proceeds are also germane to BOL's Sec. 523(a)(2) claim because, in its complaint, BOL asked for interest on the $50,000 "from the date of conversion and liquidation of the bond."
 
 
 [5]
 See also In re Boese, 8 B.R. 660, 662 (Bankr.D.S.D.1981) ("In order to prevail under 11 U.S.C. Sec. 523(a)(2)(A), a creditor must prove that a debtor knowingly and fraudulently made false representations to the creditor in order to obtain the creditor's money. Subsequent conduct contrary to a former representation by debtor does not necessarily establish the original representation to have been false.")
 
 
 [6]
 This court has applied Bankr. Rule 4007(c) strictly. See In the Matter of Sam, 894 F.2d 778, 781 (5th Cir.1990) (one purpose of Rule 4007(c) to promote expeditious and efficient administration of bankruptcy cases by assuring parties that within 60 days they know which debts subject to an exception to discharge); In the Matter of Compton, 891 F.2d 1180, 1185 (5th Cir.1990) ("Rule 4007 ... places a heavy burden on the creditor to protect his rights.")
 
 
 [7]
 We do not suggest that an amended complaint adding a ground of challenge to the dischargeability of a particular debt would not relate back, for purposes of Bankruptcy Rule 4007(c), to the time of filing of the same creditor's original complaint challenging the dischargeability of the identical debt. Courts have applied Fed.R.Civ.P. 15(c) to amended complaints filed after the Rule 4007(c) sixty-day period for filing complaints had expired. See, e.g., In re Fondren, 119 B.R. 101, 104 (Bankr.S.D.Miss.1990) ("Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the original complaint which alleged a violation of section 523(a)(2). Therefore, under Rule 15(c) ... the requested amendment here is allowable and will relate back to the date of the original complaint."); In re Heath, 114 B.R. 310, 312 (Bankr.N.D.Ga.1990) (Original complaint alleging nondischargeability under Sec. 523(a)(4) amended to allege nondischargeability under Sec. 523(a)(6) after Rule 4007(c) time period expired will relate back if claims under Sec. 523(a)(6) arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original complaint.)