In re Robert S. DiMARCO, Debtor.

HARBOR FEDERAL SAVINGS & LOAN ASSOCIATION, a United States corporation, Plaintiff,

v.

Robert S. DiMARCO, Defendant.

Bankruptcy No. 89–01506–BKC–TCB.

Adv. No. 89–0287–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 30, 1989.

Robert N. Gilbert, Diane R. Noller, Steel, Hector Davis Burns & Middleton, West Palm Beach, Fla., for plaintiff.

Rick M. Rodgers, Goldman, Bruning & Angelos, P.A., Pt. St. Lucie, Fla., for debtor/defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

Plaintiff seeks exception from discharge under 11 U.S.C. § 523(a)(2)(A) and (B) for its claims in the amount of $184,041 in Count 1 and $34,753 in Count 2. The debtor has answered and the matter was tried on August 8.

Count 1 seeks relief under § 523(a)(2)(B) for the sums advanced in reliance on the debtor's June 30, 1987 financial statement.

Count 2 seeks relief under § 523(a)(2)(A) on the basis of fraud in the debtor's obtaining the release by plaintiff of its second mortgage on the debtor's residence.

Counts 3 and 4 under § 523(a)(2)(A) and (B) were abandoned by plaintiff at trial.

I now conclude that plaintiff has failed to prove that its claims should be excepted from the debtor's discharge.

## THE RELEVANT FACTS

The debtor owned and operated three video rental stores through three separate corporations. The first store was opened in 1985. The debtor first obtained a $50,-000 loan for Hollywood Nights Video, Inc. from plaintiff in September 1985. It was secured by a second mortgage lien on the debtor's residence. This loan was increased and refinanced in 1986, 1987 and 1988. On April 19, 1988, plaintiff released its mortgage lien, Exhibit No. 17, upon the debtor's representation that he would provide title to his boat as substitute security.

When Hollywood Nights Video III, Inc. was formed in 1987, plaintiff advanced $175,000 to the corporation. It did so in partial reliance upon a personal financial statement of the debtor dated June 30, 1987, Exhibit No. 9, which showed assets of $1.5 million and debts of $193,000. The principal assets were two corporations owned by DiMarco, valued at $600,000 and loans and notes receivable of the debtor's three corporations, valued at $245,450.

Under the caption "real estate", the debtor listed a 50% interest in a New Jersey property, valued at $100,000, and his home in Stuart, Florida valued at $205,000. In addition to cash ($75,000), personal property ($125,000) and autos ($180,000), the debtor listed a boat, valued at $125,000.

In fact, the debtor did not have a 50% present interest in the New Jersey property. The property is owned by his mother. The debtor's interest is under her will. The mother is not deceased.

The debtor did not then own the boat. He was making some payments on a 28-foot Mako boat owned by another individual. The debtor had use of the boat when it was in Florida, and considered himself a "partner".

The corporate loans were guaranteed by the debtor and his wife.

### COUNT 1

Section 523(a)(2)(B) excepts from discharge a debt for money obtained by a (i) materially false written statement, (ii) respecting the debtor's financial condition, (iii) on which the creditor "reasonably relied," (iv) that the debtor furnished "with intent to deceive".

The burden is on the creditor to prove each element by "clear and convincing evidence." *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986).[1] I find that plaintiff has failed to prove the first element.

I believe the plaintiff's version as to the debtor orally misrepresenting his ownership in the New Jersey property when he discussed the matter with a loan officer. The debtor's contrary testimony now before me, that he fully explained the true nature of his ownership, is unpersuasive.

The debtor has offered no excuse or explanation for his misrepresented ownership of the boat. Instead, he argues that there was an affirmative duty on the part of the bank to investigate and verify the ownership of the claimed assets. I disagree. There is no statutory duty of a creditor to make such an investigation. This creditor did not have a custom or practice of doing so and there is no such custom or practice in the industry that I know of. I find that it had the right reasonably to rely upon the accuracy of the financial statement with respect to the ownership of the claimed assets.

However, I doubt that the bank relied on the financial statement in any material respect. The credit history of the original corporate borrower established this lender's confidence in dealing with the debtor as a known entity. (C.P. No. 7 at page 3). There was also an accountant's statement of the substantial value of the businesses. No one has controverted the $1.25 million value of the major assets.

Assuming the falsehoods with respect to the New Jersey property and the boat, with a total value of $225,000, the misrepresentations were not material. I believe that the relatively small amount of money involved in these two assets, even if they had been omitted entirely from this financial statement, would not have caused this creditor to deny the loan or the refinancing coupled with the additional $10,000 advance. The numbers involved assets far, far in excess of the maximum amount loaned and this bank had been dealing for two years with this particular debtor and his company.

I believe that the bank did not attach weight to the details represented on the financial statement. One aspect of the transaction that supports this belief is that only a cursory conversation by a loan officer with the debtor in verifying the six-month old statement was relied upon in the granting of $10,000 additional credit. No updated statement was required.

The plaintiff's allegations under § 523(a)(2)(B), therefore, have not been established.

### COUNT 2

A debt for obtaining money or property by false pretenses, false representa-

---

**1.** *Hunter* affirmed the dismissal of a complaint under a related but different subsection, § 523(a)(2)(*A*). However, the holding with respect to the burden and quantum of proof is equally applicable to § 523(a)(2)(B).

tion or actual fraud is excepted from discharge under § 523(a)(2)(A). It is plaintiff's contention that it was the victim of a false representation or actual fraud because the debtor:

> "requested Harbor to release the second mortgage on real property in exchange for a first lien position on a 25 foot Mako boat which the defendant said he owned." (C.P. No. 1 at paragraph 19).

■ The issue, therefore, is whether the debtor's representation (that he would exchange his boat title for the mortgage after the bank released the mortgage) constituted "false pretenses, a false representation, or actual fraud". .It does not. I do not think that plaintiff has alleged fraud in this paragraph. An express, affirmative misrepresentation must be alleged. *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986).

As held in *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir.1983):

> "Actionable misrepresentations must ordinarily relate to a past or existing fact. [Case cited]. A false statement amounting to a promise to do something in the future is not actionable fraud, [Case cited] even though the representation was made to induce another to enter into a transaction. [Case cited]. A plaintiff seeking to recover for such a misrepresentation must show that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made. [Case cited]." (Applying Florida law.)

Although this was not a bankruptcy case, the same rule has been consistently applied in bankruptcy:

> "A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach." 3 *Collier on Bankruptcy* (15th ed. 1989) ¶ 523.08[4] n. 17.

If it alleged fraud, that is to say that the debtor never intended to bring a boat title

to replace the house mortgage which had been pledged as partial collateral, I do not believe that that essential fact was proved before me. Plaintiff's only proof is that the debtor acquired title to the boat from his "partner" on March 7, 1988 and that he transferred the title back on May 19, 1988. Plaintiff asserts that this was "a deliberate scheme to trick Harbor into releasing the second mortgage." (C.P. No. 7 at page 4). I cannot infer from these circumstances that the plaintiff has proved that the debtor had no present intention to comply or that he knew he never would be able to comply. *See In re Todd*, 9 C.B.C.2d 821, 34 B.R. 633 (Bankr.W.D.Ky.1983).

So far as this record reflects, the bank has presented only the following testimony of the debtor to support its position on this point:

> "Q. The title was in your name?
> A. Yes.
> Q. But you never delivered the title to Harbor Federal; is that correct?
> A. It was taken back because of a lack of payment. I could not pay it.
> Q. When was it taken back, Mr. DiMarco?
> A. I'd have to refer back to the title when it was changed over. I don't—I can't even remember the time.
> Q. Do you remember was it before you talked to Harbor Federal in April of 1988?
> A. No. It was after, when I—when I brought it to their attention that I at that time was having financial difficulty with the businesses. When they told me to go elsewhere for money, was the time that I could not make any share of the payment any longer on that boat. The title was in my name for a while after that and it was given back and taken back up north." Exhibit No. 22 at p. 28.

■ It is undisputed that the debtor had title to the boat for a two-month period, including the day he promised to deliver it to the bank.[2] By giving a satisfaction of mortgage in reliance upon a *promise* by the debtor to exchange security, the cause

---

**2.** An employee of the bank verified that title to    the boat was in DiMarco's name.

of plaintiff's loss was the negligence of its own employee.[3]

Therefore, the allegations and proof under § 523(a)(2)(A) fail to establish the element of fraud in Count 2.

## CONCLUSION

Plaintiff has not carried its burden of proving exception from discharge under either Count 1 or Count 2 by clear and convincing evidence.

As is required by B.R. 9021, a separate judgment will be entered dismissing this complaint with prejudice. Costs may be taxed on motion.

DONE and ORDERED.

---

**3.** Reliance must be reasonable and ordinary precautionary measures must be used. *In re*

*Hunter,* 780 F.2d 1577, 1579–80 (11th Cir.1986).