In re Timothy M. SHEAR, Debtor.

Joan ELLIS, Plaintiff,

v.

Timothy M. SHEAR, Defendant.

Bankruptcy No. B89–04477.
Adv. No. B90–0140.

United States Bankruptcy Court,
N.D. Ohio.

Jan. 7, 1991.

John D. Sayre, Nicola, Gudbranson & Cooper, Cleveland, Ohio, for plaintiff Joan Ellis.

Thomas C. Pavlik, Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze, Cleveland, Ohio, for defendant, debtor Timothy M. Shear.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

This adversary proceeding was brought by the plaintiff, Joan Ellis, against the debtor-defendant, Timothy Shear, to establish that her claim is nondischargeable under section 523 of the Bankruptcy Code. Her claim is embodied in a judgment against the debtor entered by the Court of Common Pleas for Cuyahoga County (the "State Court") on October 5, 1989 in the amount of $35,000 plus one-half of her attorney's fees. That judgment in turn was identical to the verdict rendered by the jury that heard her case on August 18, 1989.

At the hearing set for trial of this adversary proceeding on October 25, 1990 the parties agreed that the issue of dischargeability should be determined by this Court solely on the basis of the judgment and transcript of the State Court case ("Transcript" or "Tr.") and related exhibits filed by the parties in this proceeding. Neither party presented any testimony at that hearing. Both have briefed their arguments.

### Background

The trial in State Court and this dischargeability battle reflect the bitter end to a once close relationship between the parties. Plaintiff is a real estate sales person; debtor is a real estate broker. They met in 1982 and started working together in early 1984. They became intimate about April 1984 and the debtor moved into the plaintiff's home in July 1984 shortly after he separated from his wife. During the time they lived together it appears that plaintiff paid much of their household and living expense. He was between jobs and in the throes of divorce. Until late 1985 they contemplated marriage but their relationship deteriorated and they separated at the end of 1985 or beginning of 1986. By October 1986 the defendant had remarried but had not reimbursed, or offered to reimburse, the plaintiff for the support she had provided during the time they lived together.

Based on the evidence in the Transcript the State Court jury concluded that the debtor had been unjustly enriched by the plaintiff's payments of their household and living expenses. According to the plaintiff that jury verdict necessarily embraced the operative elements of subsections 523(a)(2)(A) or (6). These subsections provide that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another equity.

The parties agreed that if the Court determined that the State Court judgment did not resolve the dischargeability issue, the Court should look solely to the Transcript and other exhibits filed in this proceeding to determine whether these subsections of section 523 barred discharge of the plaintiff's claim. Neither party chose to introduce any other evidence on the issue.

### Collateral Estoppel

■ The plaintiff would impart preclusive effect to the State Court judgment by application of the doctrine of collateral estoppel. Since the bankruptcy court has exclusive jurisdiction to determine questions of dischargeability under subsections 523(a)(2) and (6), the State Court action could not have settled dischargeability by application of the doctrine of *res judicata*. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). However, it appears clear in this circuit that if the debtor's liability has been decided in another proceeding, the bankruptcy court should look to the record in that proceeding to determine whether the facts found meet the criteria for nondischargeability under section 523 of the Bankruptcy Code and, if they do, need not and should not retry those facts. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981).

■ There is at the threshold the question of how the burden of proof employed by the State Court should affect application of collateral estoppel to this proceeding. The Sixth Circuit requires that nondischargeability under section 523(a)(2)(A) be proved by clear and convincing evidence rather than the lesser preponderance of the evidence standard which was applied in the State Court. *See, e.g., Coman v. Phillips (In re Phillips)*, 804 F.2d 930 (6th Cir. 1986). It does not appear that the Sixth Circuit has prescribed the burden of proof applicable under section 523(a)(6) of the Bankruptcy Code. Therefore, there is some doubt as to whether collateral estoppel should be applied in this proceeding, at least insofar as it involves application of section 523(a)(2)(A), since the State Court applied a preponderance of the evidence standard. But the Court need not resolve this doubt since the State Court case would not meet the *Spilman* criteria for collateral estoppel in this proceeding even if the State Court had employed the clear and convincing standard.

According to *Spilman* "[c]ollateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." 656 F.2d at 228. These criteria pose a problem for the plaintiff since the jury made no special findings of fact. Its verdict was simply for the amount of $35,000 plus one-half of the plaintiff's attorneys fees based upon the judge's instruction which incorporated none of the components of subsections 523(a)(2) or (6). The plaintiff argues, however, that the jury necessarily found the defendant's conduct unconscionable and that this finding sufficiently implicates the fraud requirement of section 523(a)(2) and/or the willful and malicious injury requirement of subsection 523(a)(6). Based on the evidence in the Transcript it is possible that the jury's verdict was premised, at least to some extent, on the criteria for nondischargeability in subsections 523(a)(2)(A) and (6); but these criteria were not developed as issues in that case nor was determination of these criteria necessary to the jury's verdict for the plaintiff.

The first count of plaintiff's complaint in the State Court sounds in quasi contract for unjust enrichment; the second count relating to the debtor's failure to pay the plaintiff's tax liability appears to sound in contract; the third count sounds in tort based on an alleged intentional and malicious assault by the debtor on the plaintiff. The complaint included no counts sounding in fraud. The judge instructed the jury only on unjust enrichment. He did not give any instruction on contract or on tort despite testimony from the plaintiff and her daughter as to the alleged assault. He told the jury that they were not to consider that count. Tr. pp. 320–22. The judge ex-

plained unjust enrichment to the jury as follows:

> Now, the doctrine of unjust enrichment is designed to prevent one person from retaining property or benefits to which he is not entitled. It's that simple. The doctrine of unjust enrichment is designed to prevent one person from retaining benefits or property to which he is not entitled. In other words, again, a person is not allowed to profit or enrich himself unfairly at another person's expense.

> Unjust enrichment can occur in any type of relationship. In any type of relationship. Whether it is between friends, neighbors, or just people living together. Unjust enrichment occurs when one person obtains benefits which in fairness belong to another person. And this can occur not only when an expenditure or payment by one person adds to the property ·or the value of another, but also where an expenditure by one person saves the other person from expense or loss.

> In order for unjust enrichment to occur, the person seeking to recover must show something more than the fact that she has provided a benefit to the—in this case, to the defendant. There must be an unjust enrichment to justify a recovery under the rule. It is not sufficient for the plaintiff to show that she has conferred a benefit upon the defendant. She must go further and show that under the circumstances he has a—she has a superior equity so that, as against him, it would be unconscionable for the defendant to retain the benefit.

> Now folks, it's not necessary that the amount of the gain and the loss be identical. Nor is it necessary for you to find that the plaintiff's loss was the sole cause of the defendant's gain. Rather, you must find from the cumulative evidence that because of their relationship, plaintiff's loss somehow enabled defendant's gain to occur. And she must do so by a preponderance of the evidence.

Giving the words in this instruction their ordinary meaning, the jury needed to find only that the defendant obtained benefits from the plaintiff and that the plaintiff had a "superior equity" to those benefits. Plaintiff makes much of the word "unconscionable." But in the context of the judge's instructions use of that word appears only to explain to the jury the implication of a finding that the plaintiff had a "superior equity."

The language of the State Court's instruction appears based upon the discussion of unjust enrichment in Ohio Jurisprudence 3d. 18 O.Jur.3d *Contracts* §§ 342, 343 (1980). Ohio Jurisprudence goes on to say in its discussion of unjust enrichment: "It is not essential, in order to create the obligation to make restitution for benefits, that the recipient should himself have been guilty of any tortious conduct or fault." 18 O.Jur.3d *Contracts* § 343 at 271 citing 66 Am.Jur.2d *Restitution and Implied Contracts* § 4 (1973). The discussion of unjust enrichment in American Jurisprudence indicates that unjust enrichment, even if coupled with unconscionability, covers a far wider spectrum than is encompassed by subsections 523(a)(2) or (6) of the Bankruptcy Code.

> The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies,· that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

66 Am.Jur.2d *Restitution and Implied Contracts* § 3 (1973)

Ohio Jurisprudence's treatment of fraud points up the disparity between the very broad reach of unjust enrichment and the limited scope of subsection 523(a)(2)(A). It distinguishes actual fraud from constructive fraud and points out that:

Actual fraud must affect the conscience and involve willful deception, while constructive or legal fraud may arise from the circumstances of the transaction or of the relationship of the parties, without the existence of fraudulent intent affecting the conscience.

50 O.Jur.3d *Fraud and Deceit* § 7 (1984). Subsection 523(a)(2)(A) employs the phrase "false pretenses, a false representation, or *actual* fraud" (emphasis added). The legislative history makes clear that the Code draftsmen selected the word "actual" to limit nondischargeable claims. "Subparagraph (A) is intended to codify current case law, *e.g., Neal v. Clark,* 95 U.S. 704 [24 L.Ed. 586] (1878) which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law." 124 Cong.Rec. H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini), *reprinted in* 4 *Norton Bankruptcy Law and Practice,* Annotated Legislative History, § 523, page 397 (Callaghan and Company, 1983). The upshot of this analysis is that the jury in the State Court could, and probably did, find for the plaintiff under the judge's instructions and under applicable Ohio law without finding "false pretenses, a false representation, or actual fraud" under subsection 523(a)(2)(A) or a "willful and malicious injury" under 523(a)(6).

Moreover, even if the jury had found the debtor's behavior to be "unconscionable," this would not help plaintiff. The concept of unconscionability is about as broad and amorphous as the concept of unjust enrichment. According to Webster's New World Dictionary "unconscionable" means: "1: not guided or restrained by conscience; unscrupulous. 2: unreasonable, excessive, or immoderate." Webster's New World Dictionary 1545 (2d College ed. 1986). Therefore, under the test in *Spilman v. Harley* the doctrine of collateral estoppel is not applicable to this Court's determination of whether the debt evidenced by the plaintiff's State Court judgment is nondischargeable. The Court must look to the evidence in the Transcript to decide that issue.

## Dischargeability Under the Evidence Presented In State Court

The task of discerning the facts relevant to application of section 523 from the evidence in the Transcript and exhibits filed in this Court is complicated in several ways. First, neither the pleadings in the State Court nor the testimony of the witnesses was focused on the elements of subsection 523(a)(2) or (6). Second, the Transcript is incomplete. It did not include the parties' arguments to the jury nor any explanation for the judge's decision to withdraw from the jury the assault claim in the third count of plaintiff's complaint. Although the plaintiff and her daughter testified to the alleged assault, the defendant did not testify about it either on direct or cross-examination. Third, the Court did not have the benefit of observing the witnesses although the jury verdict helps resolve credibility questions.

The jury obviously believed that the plaintiff had incurred expenses or made payments for the benefit of the debtor worth $35,000 for which he should provide restitution. But as the foregoing analysis indicates, this means only that the jury accepted her case that she was treated unfairly and rejected his arguments to the contrary. For this Court to find plaintiff's claims nondischargeable it must conclude from the evidence in the Transcript that the debtor willfully and maliciously injured the plaintiff or her property or that he deceived her intentionally or with reckless disregard of the truth.

█ Liabilities for assault are generally nondischargeable under subsection 523(a)(6). *See* 3 L. King, Collier on Bankruptcy ¶ 523.16, at p. 523–120 (15th ed. 1989). But the State Court judge withdrew the assault count from the jury and it does not appear that the $35,000 verdict and judgment reflect any damages relating to the alleged assault. This issue may have been withdrawn because the plaintiff and debtor apparently made up and continued to live together for some weeks after it occurred or because of some deal between

the parties. In any event this Court has no sound basis to find the plaintiff's claim nondischargeable in whole or in part under section 523(a)(6) based on the alleged assault.

Apart from the alleged assault, however, there is no other evidence that the debtor willfully and maliciously injured the plaintiff or her property. According to her testimony, the plaintiff willingly spent her money on the parties' household and other expenses in the belief that the debtor was needful, that he would make it up to her when his fortunes improved and that they would marry. If the plaintiff's claim arising out of these expenditures is to be found nondischargeable, it must be because the debtor induced them by a false representation, false pretenses or actual fraud under section 523(a)(2)(A).

According to the Sixth Circuit Court of Appeals:

It is established that in order to except a debt from discharge under § 523(a)(2)(A) the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of loss.

*Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). *Accord First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421 (7th Cir.1985).

▪ The plaintiff has the burden of proving the elements of nondischargeability under subsection 523(a)(2)(A) by clear and convincing evidence. *Manufacturer's Hanover Trust Company v. Ward (In re Ward)*, 857 F.2d 1082 (6th Cir.1988); *In re Phillips, supra; Knoxville Teachers Credit Union v. Parkey (In re Parkey)*, 790 F.2d 490 (6th Cir.1986). But even on a preponderance of the evidence standard this Court could not conclude from the Transcript and exhibits that the plaintiff had borne her burden of showing that subsection 523(a)(2)(A) was applicable to her

claim against the debtor. In reaching this conclusion the Court examined the Transcript and other exhibits in this proceeding for evidence that the debtor had deceived the plaintiff by overtly or implicitly misrepresenting his financial condition or needs or his intention to follow through on his promises and assurances to her, and for evidence that part or all of the plaintiff's $35,000 losses or expenditures reflected in the State Court verdict and judgment were induced by the debtor's misrepresentations.

Even if plaintiff's testimony is accepted at face value, it is difficult to identify any misrepresentations which plaintiff may have relied upon to her detriment. The parties were living together as a family. Their relationship was not based on bargain but on less explicit, often tacit, understandings and expectations, as reflected in the following testimony of the plaintiff:

Q. Did you have an understanding between you as to the finances of the household?

A. Yes. He [the debtor] said he was going through a rough time. He had a lot of irons in the fire. Things would get better, you know, would I help, you know, would I sustain him for a while, and he would make it up.

Q. Did you have an understanding of what he meant by help for a while?

A. He would always say something would be happening soon. Everything was a sure thing.

Tr. p. 19.

Her testimony on his alleged promise to pay her tax liability is only slightly more specific. She testified that she owed $8,000 or $9,000 on her 1984 tax which she had no money to pay; she told the debtor " 'We are living off my gross income and we have been and now I have no money to pay taxes.' He said, 'Don't worry,' you know, 'I've got all these things going. I'll take care of it.' He said, 'We have to use this money now. There is no choice,' you know, 'we've got to use what you've got.' " Tr. pp. 34, 35. She testified that she was forced to let her health insurance lapse in May or June 1985 because of their expenses. According to her testimony he

said that he would realize substantial money from the sale of his marital home which was listed at $220,000 which would pay the taxes and provide her health insurance. But the house sold for $204,000 in August and no proceeds were paid to her. Tr. pp. 42, 43.

I do not find from the Transcript any bargained-for promises—i.e., that the plaintiff exacted a promise from the debtor for future payments as a condition to her payments of their household and living expenses. In other words, the debtor's assurances and the plaintiff's expectations were the product of their domestic relationship, not a deal struck between them. This explains the fact that the case in State Court was presented to the jury on the theory of unjust enrichment sounding in restitution rather than on the basis of express promises sounding in contract.

■ But even if the debtor's assurances are viewed as promises to be performed without regard to the continuation of their relationship, the plaintiff has failed to show by a preponderance of the evidence, let alone by clear and convincing evidence, that the debtor did not intend to follow through on them. Had the parties stayed together, it appears probable that he would have followed through. In order to find a misrepresentation in connection with a promise, it is not enough to show that the promise was not performed; the plaintiff must show that the defendant did not intend to perform or at the least had no reasonable basis to suppose that he could perform at the time the promise was made. *See, e.g., Harbor Federal Savings & Loan Ass'n. v. DiMarco (In re DiMarco)*, 105 B.R. 128 (Bankr.S.D.Fla.1989); *Mason Lumber Co. v. Martin (In re Martin)*, 70 B.R. 146 (Bankr.M.D.Ala.1986); 3 L. King, Collier on Bankruptcy ¶ 523.08[4], at p. 523–49 (15th ed. 1989). The Transcript supports no such finding.

■ The Transcript does show that the Debtor made representations to the plaintiff as part of, and in connection with, his assurances. But here again, the plaintiff has not borne her burden of showing that the debtor misrepresented his condition or circumstances, or that she was induced to make payments or suffer losses because of any misrepresentation. The evidence is undisputed, in fact the plaintiff emphasized, that the debtor was hard-pressed financially at least from July 1984, when the parties started living together, until April or May 1985, when the debtor worked out his financial arrangements with his ex-wife and took a new job. The upshot of the evidence is that for about 10 of the 17 months they lived together, during which the plaintiff contributed substantially to their household and living expenses, the debtor's representations as to his financial problems and constraints were true. There is no evidence that any benefits obtained by him during this period were based upon any misrepresentation or deception.

The evidence indicates that the debtor's finances improved after he took his new job in April or May 1985. He also realized some proceeds from the sale of his marital house in late summer of 1985. The evidence indicates that he had more money available after May 1985, but it does not show that he did not continue to be financially hard-pressed. In the summer of 1986, after they had separated, he realized $20,000 to $40,000 from the settlement of a lawsuit he had brought against his former partners, none of which he shared with the plaintiff.

But I do not find that he misrepresented his situation or that the plaintiff was misled by his representations in making her continued contributions to their household and living expenses after that time. At about the time he took the new job, he changed the address for his personal bank statement from the couple's home to his office. But his explanation that his new job provided him an office where he could deal with his bank statement is credible. Many couples take steps to maintain some privacy in their affairs. The plaintiff knew the debtor had changed jobs but apparently did not press him to pay more of their expenses or to disclose more fully his financial situation.

In summary, the Transcript reveals that this case involves not fraud or misrepresen-

tation but the equitable considerations on which the judge in the State Court instructed the jury. It appears probable that the jury verdict was influenced by events having nothing to do with willful and malicious injury, misrepresentation or fraud. Within eight months after they separated the debtor had a new young wife and a new expensive house. At the time of trial he had a new baby with another on the way. The plaintiff was left with a tax lien and the aftermath of a stressful relationship including an abortion.

The debtor's apparent decision after his fortunes improved in April or May 1985 not to share more of their common expenses may have been selfish, whatever his other expenses and obligations. His decision not to use at least some of the proceeds of his 1986 settlement to help cover her tax lien may have been ungenerous, whatever his other needs. Although the Transcript suggests no reason to doubt the debtor's intention to marry the plaintiff or, as part of their relationship, to share with her any improvement in his fortunes, it appears that he gave priority to his personal needs and not to her problems or sacrifice. Therefore, although the plaintiff's claim reflects the equities as disclosed by the evidence in the Transcript, the plaintiff has failed to meet her burden of showing that her claim is nondischargeable under subsections 523(a)(2)(A) or (6) of the Bankruptcy Code. The Court's order in conformity with this memorandum is attached.

### JUDGMENT

A memorandum of decision having been rendered by the Court in this adversary proceeding,

IT IS ORDERED, ADJUDGED, AND DECREED THAT the complaint of the plaintiff, Joan Ellis seeking a judgment holding her claim against the debtor-defendant nondischargeable pursuant to 11 U.S.C. § 523 be, and it hereby is, denied.