In re Johnny Overton YOUNG, Jr., Debtor.

Pat YOUNG, Plaintiff,

v.

Johnny Overton YOUNG, Defendant.

Bankruptcy No. 94–70746.
Adv. No. 94–7082.

United States Bankruptcy Court,
E.D. Oklahoma.

May 12, 1995.

Susan Mixon, Durant, OK, for plaintiff.

Thomas B. Webb, McAlester, OK, for defendant.

## ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 19th day of April, 1995, the above-referenced adversary proceeding came on for trial in Durant, Oklahoma. Counsel appearing were Susan Mixon for the Plaintiff and Tom Webb for the Defendant.

After a review of the above-referenced pleadings, testimony presented and arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr. P., in this core proceeding:

## FINDINGS OF FACT

1. The parties were married for approximately twenty-nine (29) years until their marriage ended in divorce on February 14, 1994. The Decree of Divorce provided, in pertinent part:

6. The Court further finds that according to the agreed property settlement, the defendant [Mr. Young] herein assumes and agrees to pay the following specific debts and obligations outstanding:

a. A certain bank note in the approximate principal amount of $11,000.00 on which Plaintiff and Defendant are signatories, the monthly payment on said note being $166.00.

b. Car payment of $324.11 per month on a certain 1993 Plymouth Voyager, SUBJECT to a lien in favor of Exchange National Bank in Ardmore, Oklahoma.

c. Debt to the Internal Revenue Service, the approximate balance of which is $700.00, payable in monthly installments of $50.00.

d. Credit card debt on the following credit cards, and the defendant is to notify the creditors that he is assuming the debt on the credit card obligations, and is to have plaintiff [Mrs. Young] removed as an authorized user of the credit cards.

Wards, Mervyns, Bealls,
VISA, MasterCard and Sears.

e. Debt to GECAF made for the purchase of home appliances.

7. The Court further finds that according to the agreed property settlement, the Plaintiff [Mrs. Young] herein assumes and

agrees to pay the following specific debts and obligations outstanding:

a. Monthly mortgage payment on the home of the parties in the amount of $449.00 per month.

b. A certain bank note with monthly payments of $100.00 made by the Plaintiff for the down payment on the automobile described in paragraph (c) below.

c. Monthly payments in the amount of $329.34 on the 1994 Chevrolet Camaro, SUBJECT to a lien in favor of Bank One Texas, Dallas, Texas.

In addition, ownership of the home, which had been held by the parties as joint tenants, was changed and the parties held the property as tenants in common. Mr. and Mrs. Young both testified that they agreed to this property division. (See Decree of Divorce dated February 14, 1994). Both parties were represented by counsel during the divorce action.

2. The Debtor testified that he thought about bankruptcy for awhile before he filed for Chapter 7 relief on June 16, 1994. He further testified that he finally decided to file bankruptcy during the latter part of May or the beginning of June, 1994.

3. Testimony of the parties' daughter, Angie Edwards, was presented. Mrs. Edwards testified that she had had conversations in December, 1993 and January, 1994 with her father wherein her father stated that if he ended up with many bills as a result of the divorce, he would just file bankruptcy. During the Debtor's testimony, the Debtor denied having any such conversations with his daughter. Mrs. Edwards was not credible.

4. Mrs. Young admitted, on cross-examination, that the Debtor had mentioned bankruptcy before; however, Mrs. Young testified that she did not believe that the Debtor would file bankruptcy. Mrs. Young further testified that if she had really believed Mr. Young would file bankruptcy, then she would not have agreed to the terms set forth in the divorce decree. Specifically, she would not have allowed the parties to remain as tenants in common in the home.

5. Mrs. Young testified that she is a school teacher and has been employed as such for ten (10) years. Her annual income is approximately $26,000.00. The Debtor is employed at Grocery Supply Company. Until January 1994, when he resigned, the Debtor was a pastor of Bible Baptist Church in Denison, Texas. The Debtor's W–2 reflects that he received $20,798.10 in wages in 1993 from Grocery Supply Company. However, the Debtor's tax return for 1993 reflects wages in the amount of $24,309.00. Mr. Young could not explain the discrepancy. The Debtor's Statement of Financial Affairs reflects that he received $9,000.00 from pastoring in 1993. The Debtor's Statement of Affairs also reflects that the Debtor had received wages of $7,000.00 in 1994 to the date of filing bankruptcy. It does not appear from the Debtor's Statement that any money was received from pastoring.

6. The Debtor felt pressure to resign from pastoring because he did not want the church affected by his family problems or problems which might arise because of his extramarital affair.

7. The Plaintiff urges that the debt which arose out of the Decree of Divorce is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(5) and that the Debtor be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) and (4).

### CONCLUSIONS OF LAW

A. Section 523(a)(2)(A) of the Bankruptcy Code provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The party objecting to the dischargeability of the debt has the burden of proving by a preponderance of the evidence the elements necessary to establish that the debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ B. For a creditor's claim to be excepted from discharge based on fraud, the creditor must establish:

1. misrepresentation by the debtor;
2. with knowledge of the falsity;
3. with the intent to defraud;
4. coupled with reasonable reliance by the overreached; and
5. resulting damages.

*In re Arterburn,* 15 B.R. 189, 191–92 (Bankr. W.D.Okla.1981) *(citations omitted).* In *Arterburn,* the Court found that the Defendant/Debtor did not intend to pay the debts pursuant to the divorce decree. However, the facts of *Arterburn* are distinguishable from the case at bar. In *Arterburn,* the bankruptcy petition was executed two days after the divorce decree was entered and the petition was filed only four days after the decree of divorce was entered. *Id.* at 191. In the other case cited by the Plaintiff, *In re Brasher,* 20 B.R. 408, 410 (Bankr.W.D.Tenn. 1982), the Court found:

> No substantial change in financial condition of the debtor in the 20 days after the entry of the divorce decree to warrant any other inference but that the petition was filed as a part of his [the debtor] plan to induce the plaintiff to waive alimony in return for his promise to pay debts he intended to discharge in bankruptcy.

As a result, the Court held that the debts assumed pursuant to the divorce decree were nondischargeable. *Id.*

■ C. In the instant case, the Debtor did not file bankruptcy until four months after the divorce decree had been entered. He paid substantially all the debt he was ordered to pay in the agreed Decree of Divorce. Thus, this case is not analogous to the cases cited by the Plaintiff. Further, this Court finds no evidence of any misrepresentation by the Debtor. Mrs. Young testified that the Debtor had mentioned bankruptcy as a possibility; however, Mrs. Young testified she did not believe the Debtor would file bankruptcy. The Debtor testified that at the time the divorce decree was entered, he did not consider filing bankruptcy, but at the end of May or beginning of June, 1994, the Debtor realized that he had to file bankruptcy after consulting with counsel.

■ The Debtor must have had the requisite intent to deceive at the time the representations were made. To provide a basis for excepting a debt from discharge, the Debtor's alleged fraud must have existed at the time the debt was incurred. *In re Scarlata,* 127 B.R. 1004 (N.D.Ill.1991), *aff'd,* 979 F.2d 521 (1992). "A mere promise to be executed in the future is not sufficient to make a debt dischargeable, even though there is no excuse for the subsequent breach." *In re Homer,* 45 B.R. 15 (Bankr. W.D.Mo.1984) *(citing 1A Collier on Bankruptcy* ¶ 17.16, pp. 1638–39 (15th ed. 1976)). To find a "misrepresentation" in connection with the promise, for purposes of the fraud exception to dischargeability, it is not enough to show that the promise was not performed. *In re Shear,* 123 B.R. 247 (Bankr.N.D.Ohio 1991). The creditor must show that there was no reasonable basis to assure that the debtor would perform at the time the promise was made. *Id.*

Mr. Young may have thought about bankruptcy before entering into the agreement; however, there is no evidence that, at the time the divorce decree was entered, he did not intend to pay the debts. As a result, the debt is dischargeable.

■ Alternatively, if the Debtor had made a misrepresentation regarding his intent to pay the debt pursuant to the divorce decree, Mrs. Young could not have reasonably relied on the representation. Mrs. Young testified that the parties had discussed bankruptcy prior to the divorce and Mrs. Young was in a position to judge the nature of the Debtor's assets and could not have reasonably relied on anything the Debtor said. *See, e.g., In re Henderson,* 134 B.R. 147 (Bankr.E.D.Pa. 1991). Thus, the debt would not be dischargeable.

■ D. Section 523(a)(5) of the Bankruptcy Code provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in

connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

Interspousal obligations are not considered alimony, maintenance or support, where the parties have approximately equal income at the time of the agreement and there is nothing in the record regarding age, health, work skills or education level. *In re Peterson,* 133 B.R. 508, 513 (Bankr.W.D.Mo.1991).

■ In *In re Welborn,* 126 B.R. 948, 955 (Bankr.E.D.Va.1991), the debtor's obligation, pursuant to the terms of a divorce decree to hold his former spouse harmless from the "responsible person," was not in the nature of "alimony, maintenance or support" and could be discharged. There is no evidence that the Debtor had intended to provide the Plaintiff with any support. *Id.* If a debtor's obligation to his former spouse constitutes a former spouse's source of income at the time of the divorce decree, the obligation is a support obligation for purposes of the exception to discharge. *In re Sampson,* 997 F.2d 717 (10th Cir.1993).

■ In the case at bar, the Decree of Divorce makes no mention of "alimony, maintenance or support." More specifically, the Decree stated "[t]hat the parties have made an agreement whereby they have settled their mutual claims concerning a division of all jointly acquired property." Further, in accordance with the property settlement, the parties distributed the debt. The Plaintiff is a school teacher with annual income of approximately $26,000.00. This is more than the Debtor earns from his employment. As a result, the debt arising from the Decree of Divorce is not support and therefore is dischargeable.

E. Section 727(a)(3) and (4) of the Bankruptcy Code provide:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

It is unclear whether the Plaintiff is still pursuing this portion of her Complaint objecting to the Debtor's discharge. The Pre–Trial Order reflects that the basis of the action is also pursuant to 11 U.S.C. § 727(a)(3) and (4). Since no evidence was presented pertaining to this matter, the Debtor will not be denied a discharge under 11 U.S.C. § 727(a)(3).

■ The Debtor's Schedule J reflects that the Debtor's expenses include $350.00 per month for rent, which he was not paying at the time he filed bankruptcy. Mr. Young testified that this figure was an estimate and that he was looking for a place to live. At the time the Debtor filed bankruptcy, he was living with his sister; however, he moved out at the end of June, 1994 or the beginning of July, 1994. The Plaintiff also presented evidence at the trial regarding $200.00 per month transportation costs listed in the Debtor's schedules. The Defendant testified that there were discrepancies between the amount of income reflected on his tax returns and the amount of income listed in his schedules. Again, he could not explain the discrepancies.

Omissions and incorrect answers in Debtor's schedules, without the showing of actual intent to hinder, delay or defraud a creditor did not warrant a denial of a discharge. *In re Sullivan,* 111 B.R. 317, 322 (Bankr. D.Mont.1990). In the instant case, the creditor has not shown that the alleged false statements were anything other than incorrect answers. There was no evidence of actual fraud. As a result, the Debtor will not be denied a discharge pursuant to § 727(a)(4).

IT IS THEREFORE ORDERED that Judgment is granted for the Defendant and the debt, as set forth in the Decree of Divorce, is dischargeable.