In re Nancy BETHEL, Debtor.

David Woodward, Plaintiff,

v.

Nancy Bethel, Defendant.

Nos. 02–3161, 02–30836.

United States Bankruptcy Court,
N.D. Ohio.

May 23, 2003.

David M. Woodward, Gary E Horn, Toledo, OH, for Plaintiff.

Nancy L. Bethel, Thomas R Furey, Toledo, OH, for Defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to de-

termine the dischargeability of certain marital debts which the Debtor was ordered to assume pursuant to a decree of divorce entered on February 20, 2001. The Plaintiff's complaint is brought pursuant to three statutory exceptions to discharge: 11 U.S.C. § 523(a)(2)(A), a debt arising from a false pretense, a false representation, or actual fraud; 11 U.S.C. § 523(a)(6), a debt arising from a willful and malicious injury; and 11 U.S.C. § 523(a)(15), a debt arising from a property settlement in a divorce or separation. After considering the evidence presented at the Trial held on this matter, as well as the entire record of this case, the Court, for the reasons that will now be explained, finds that the marital debts enumerated herein are nondischargeable pursuant to § 523(a)(2)(A).

Generally speaking, § 523(a)(2)(A) excepts from discharge any debt incurred by a dishonest act. This statutory exception to discharge is at the center of the fundamental bankruptcy policy which holds that only the honest, but unfortunate debtor is entitled to a discharge of his or her debts. *Cohen v. de la Cruz (In re Cohen)*, 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In most circumstances, however, when the dischargeability of a marital debt is at issue, the § 523(a)(2)(A) exception to discharge is not utilized given that the debt may be found to be nondischargeable under one of two other exceptions to discharge which are specifically tailored for marital debts: § 523(a)(5), debts intended for support of the nondebtor spouse; and § 523(a)(15), marital debts involving a distribution of property. Nevertheless, as long as its conditions are met, a debt is not excluded from the scope of § 523(a)(2)(A) merely because it constitutes a marital obligation.[1] In fact, in some instances, § 523(a)(2)(A) may constitute the only possible grounds for nondischargeability of a marital debt; this condition arises because § 523(a)(5), being confined to a support obligation, is of limited applicability, and § 523(a)(15), involving property distributions, is subject to certain affirmative defenses.

The statutory language of § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

In order to sustain a cause of action under § 523(a)(2)(A), it is the creditor's burden to establish, by a preponderance of the evidence, the existence of the five common law elements of fraud. *Chase Manhattan Bank v. Alnajjar, (In re Alnajjar)*, 276 B.R. 844, 848 (Bankr.N.D.Ohio 2002). These elements are: (1) the debtor made a false representation; (2) the debtor knew such representation to be false at the time they were made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor's loss was the proximate result of the

---

**1.** *See Sullivan v. Hallagan (In re Hallagan)*, 241 B.R. 544 (Bankr.N.D.Ohio 1999); *Brasher v. Brasher (In re Brasher)*, 20 B.R. 408 (Bankr.W.D.Tenn.1982); *Arterburn v. Arterburn (In re Arterburn)*, 15 B.R. 189 (Bankr. W.D.Okla.1981). *See also Guske v. Guske (In re Guske)*, 243 B.R. 359 (8th Cir. BAP 2000) (finding that § 523(a)(2)(A) may be applied to a marital debt, but declining to do so under the particular facts of the case); *Young v. Young (In re Young)*, 181 B.R. 555 (Bankr. E.D.Okla.1995) (same).

misrepresentation having been made. *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D.Ohio 2001).

As it pertains to the above elements, the Debtor acceded to the Plaintiff's compliance with the first and last elements given that she did not dispute these three matters: (1) on December 28, 2000, the Debtor agreed in the Parties' separation agreement to assume certain credit card debts totaling Eleven Thousand Three Hundred Forty-two dollars ($11,342.00); (2) at the time the Debtor filed for bankruptcy relief on February 15, 2002, no payments had been made on these credit card debts; and (3) the Debtor received her bankruptcy discharge on June 13, 2002, thereby causing the Plaintiff, as a cosigner, to become solely liable for the credit card obligations. Accordingly, and as is common in many situations under § 523(a)(2)(A), the disputed matter at Trial centered solely on the middle elements of the statute: (1) whether the debtor, with knowledge as to falsity of the representation, intended to deceive the creditor; and (2) whether the creditor justifiably relied upon the misrepresentation.

■ In order to establish that a debtor knowingly acted with the intent to deceive, it must be shown that at the time the debt was incurred, the debtor never had any intention of repaying the obligation in full. *Clyde–Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 855 (Bankr.N.D.Ohio 2002). To make such a determination, it is almost always necessary for a court to look to circumstantial evidence as rarely, if ever, will a debtor admit to intentionally acting in a fraudulent manner. *Id.* Such circumstantial evidence is normally derived from the traditional badges of fraud—e.g., financial difficulty, suspicious timing of events,—which are then viewed in the ag-gregate to determine whether the debtor's conduct presents a picture of deceptive conduct. *Henkel v. Green (In re Green)*, 268 B.R. 628, 646 (Bankr.M.D.Fla.2001).

■ In looking to the traditional indicia of fraud, the general timing and chronology of events in this case strongly lend themselves to a finding of fraudulent intent. Specifically, given the following progression of events, it may be inferred that at the time the Debtor signed the separation agreement she never had any intention of paying the credit card debts set forth therein:

> On December 28, 2000, the Debtor signed the Parties' separation agreement, which was later incorporated in full into the state court's decree of divorce. In this agreement, the Debtor agreed to assume certain credit card debts totaling $11,342.00. Of this amount, the Debtor was to pay two credit card debts totaling $1,464.00 immediately upon receipt of her share of equity in the Parties' marital property; the remaining debt was then to be fully paid within one year, commencing from the entry of the divorce decree. (Plaintiff's Exhibit No. 2).

> In the last week of December of 2000, the Debtor received $19,466.00 for her share of equity in the property. This money was obtained through the Plaintiff refinancing the marital residence. Thereafter, from late December of 2000 to late January of 2001, the Plaintiff issued checks to various creditors, including friends and family members, for over $13,000.00. (Plaintiff's Exhibit No. 6)

Of particular noteworthiness with the above progression of events is the fact that at essentially the same time the Debtor signed the separation agreement, she obtained over Nineteen Thousand dollars ($19,000.00) for her share of equity in the

Parties' marital residence, but then failed, in direct contravention to the terms set forth in the agreement, to immediately pay two credit card debts totaling just One Thousand Four–Hundred Sixty-four dollars ($1,464.00). In addition, the above facts beg the question that if the Debtor did truly intend to pay the credit card obligations, why did she pay many other debts to friends and family members, but not any of the credit card debts for which her soon to be ex-husband was also liable. In this regard, a couple of things have not gone unnoticed to the Court. First, even after paying family members and friends, the Debtor still had approximately Six Thousand dollars ($6,000.00) remaining from her share of equity in the marital residence. Second, the equity made available to the Debtor was only accomplished as a result of the Plaintiff complying with his duties under the terms of the Parties' separation agreement. In fact, had the situation been reversed—that is, had the Plaintiff, after refinancing the Parties' marital home, not turned over to the Debtor her share of equity in the property—the Debtor would certainly have been justified in pursuing the Plaintiff for fraud.

To refute the above inference of fraud, the Debtor asserted in her Trial testimony that after receiving her share of equity in the Parties' marital property, she incurred extra expenses relating to such things as health and auto insurance, and therefore did not have the means to pay the credit card debts. This argument, however, while it may have carried weight had the Debtor made at least some payments on the credit card debts, simply does explain the complete lack of payments on these obligations when, as previously explained, funds were available to make such payments. Thus, for this reason, the Court simply cannot attach any credibility to the explanation put forth by the Debtor. Accordingly, given the inference of fraud that

exists in this case, it is the finding of this Court that the Plaintiff has sustained his burden of showing that the Debtor, with knowledge as to falsity of the representation, intended to defraud the Plaintiff regarding the repayment of the credit card debts.

■■■■ In addition to showing that a debtor acted with the intent to defraud, an action brought under § 523(a)(2)(A) also requires establishing that the creditor relied upon the misrepresentation. For purposes of § 523(a)(2)(A), the Supreme Court of the United States has held that a creditor's reliance need only be justifiable, not reasonable. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The difference between the two standards is that the former is based upon a subjective interpretation, while the latter is based upon an objective reading. *Arndt v. Hanna (In re Hanna)*, 197 B.R. 413, 425 (Bankr.E.D.N.Y.1996). As a result, justifiable reliance merely requires that a creditor act appropriately according to his individual circumstances. *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 149 (Bankr. M.D.Ga.2002). This means that a party may justifiably rely on a misrepresentation even when the falsity of the representation could have been ascertained by an investigation. On the other hand, reliance is not justifiable if the creditor blindly turns their eyes away from things which would have clearly shown that any reliance on the debtor's representations was misplaced. *Id.*

■■■ Although the record of this case was not exactly replete with facts relevant to the justifiable reliance standard, a couple of things do work in the Plaintiff's favor. First, there is no evidence that the Debtor gave any verbal indication that, despite signing an agreement to the contrary, she would be unable to pay her

credit card obligations. This is significant because in the context of a separation agreement/divorce decree, the only reported case to find that a creditor's reliance was not justifiable, occurred when the debtor specifically told his spouse that he had no intention of repaying the debt contained in the divorce decree. *Guske v. Guske (In re Guske)*, 243 B.R. 359, 364 (8th Cir. BAP 2000). Limiting the lack of justifiable reliance to such blunt circumstances makes sense as a party should be able to rely on any representation made by another party that will later be incorporated into a court order or decree. The second consideration which works in the Plaintiff's favor is that the Debtor was represented by legal counsel at the time the separation agreement was executed. It would thus follow that the Debtor was fully informed as to the provisions of the separation agreement, and that the Plaintiff could rely on this fact in assuming that the Debtor would comply with its terms.

Thus, in light of the above factors which are favorable to the Plaintiff's position, and in conjuncture with the lack of any evidence which would tend to show that the Plaintiff's reliance was not justifiable, the Court comes to the conclusion that the Plaintiff, for purposes of § 523(a)(2)(A), justifiably relied on the Debtor's misrepresentations. Accordingly, for all of the reasons stated in this Decision, it is the judgment of this Court that the Plaintiff has sustained his burden under § 523(a)(2)(A). Given this decision, the Court will not address the merits of the Plaintiff's cause of action under either § 523(a)(6) or § 523(a)(15).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the legal obligations of the Debtor, Nancy Bethel, to the Plaintiff, David Woodward, concerning those credit card debts enumerated in the Parties' Decree of Divorce (Case No. DM01–5014, Court of Common Pleas of Lucas County, Ohio, dated February 20, 2001), be, and are hereby, determined to be NONDISCHARGEABLE DEBTS under the same terms and conditions as set forth in the Parties' Decree of Divorce.