**In re Lamon ZACHARY and Barbara Zachary, Debtors.**

**Elester WILLIAMS, Plaintiff,**

**v.**

**Lamon ZACHARY and Barbara Zachary, Defendants.**

**Bankruptcy No. 391–37690 RCM–7. Adv. No. 391–3848.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 14, 1992.

Lawrence D. Sharp, Dallas, TX, for debtors.

Duke Salisbury, Richardson, TX, Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT C. McGUIRE, Chief Judge.

Following are the Court's Findings of Fact and Conclusions of Law from the trial of this case on July 6, 1992:

### Findings of Fact

1. Elester Williams ("Plaintiff") filed suit and received a verdict and judgment in a civil action styled *Elester Williams vs. Lamon Zachary, Jr., Individually and d/b/a LZJ Super Cleaning Service, Inc.; Barbara Zachary, Individually and d/b/a LZJ Super Cleaning Service, Inc.; LZJ Super Cleaning Service, Inc., a Texas Corporation,* Cause Number 90–12856–D in the 95th Judicial District Court for Dallas County, Texas (the "State Court Action").

2. The jury's answers to all the questions are attached hereto as Exhibit 1, and hereby incorporated herein by reference.

3. These jury answers to questions 1, 2, and 3 establish that Lamon Zachary "and/or" Barbara Zachary ("Defendants" or "Debtors") made one or more fraudulent representations to Plaintiff, proximately causing $29,000 actual damages to Plaintiff, plus $700 exemplary damages (Question 3) to Plaintiff. It is difficult to imagine a factual scenario where findings such as issues 1 and 2 would not result from "*a*" defendant obtaining money, property, or services by fraud. A critical problem with the court's charge in this case, as analyzed more fully hereafter, is the use of the words "and/or" throughout the charge when referencing the Debtors. The underlying State Court Second Amended Petition contains very broad allegations of fraud, including:

(a) a promise of a $29,000 salary;

(b) Plaintiff working without pay and passing up other business opportunities to get the business going, in return for a promise of future pay;

(c) expenditure of all Plaintiff's savings based upon Defendants' representations;

(d) the promise of a long term opportunity—disavowed by Defendants; and

(e) the promise that Plaintiff would grow with the new company—disavowed by Defendants.

The petition's general claims were for: fraud, breach of contract, tortious interference, intentional infliction of emotional distress, promissory estoppel, and *quantum meruit.* The record must show that the underlying state court judgment "is not a breach of contract action expanded into a fraud claim but rather that the fraud claim is the primary basis for the judgment". *In re Church,* 69 B.R. 425 (Bankr.N.D.Tex. 1987); *In re Guy,* 101 B.R. 961, 978 (Bankr. N.D.Ind.1988). A primary principle and purpose of the bankruptcy laws is to provide a debtor with a comprehensive discharge of virtually all his obligations. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933); *Matter*

*of Boyle,* 819 F.2d 583, 587 (5th Cir.1987). One of the most important purposes of the Bankruptcy Code is to insure that the debtor can obtain a "fresh start" provided by a discharge. *Matter of Boyle, supra.*

4. The jury also found the attorney fees in Question 16. Plaintiff's petition requests attorney fees based upon § 38.001 of the Tex.Civ.Prac. & Rem.Code Ann.

5. On August 31, 1991, a judgment was rendered on the verdict awarding Plaintiff a joint and several judgment against Defendants based on the actual and exemplary damages and attorney fees found by the jury in response to Questions 1, 2, 3, and 16 respectively.

6. No state court statement of facts was offered into evidence by either side.

7. In answer to the following numbered jury questions, the jury found as follows:

(4) Mr. "and/or" Mrs. Zachary agreed to pay Plaintiff for the work he performed.

(5) Mr. "and/or" Mrs. Zachary failed to pay Plaintiff for the work he performed.

(6) The failure to pay was a producing cause of damage to Plaintiff.

(7) Plaintiff should not be awarded damages by reason of positive responses to Nos. 4, 5, and 6.

(11) Mr. "and/or" Mrs. Zachary promised Plaintiff he would be employed by them if they obtained the contract with TI.

(12) Mr. "and/or" Mrs. Zachary should have foreseen that Plaintiff would rely on such promise.

(13) Plaintiff substantially relied on such promise.

(14) The failure to perform the promise inquired about in No. 11 was not excused by the unavailability of Plaintiff.

(15) No specific sum of money would put Plaintiff in the position he would have been in if he had not acted in reliance upon the promise inquired about in Question No. 11.

8. Aside from the state court petition, charge, and judgment, and part of the written contract between the parties, the live evidence offered July 6, 1992 was sparse. That limited evidence showed that Plaintiff did not work for Defendants after December 1989. Defendants obtained the Texas Instruments ("TI") contract in December 1989. In the winter of 1989, Plaintiff was looking for other employment. Under TI rules, Defendants could not interface with TI and had to use a go-between, such as Plaintiff, who could meet with TI for the Defendants. The underlying TI contract was a minority business cleaning contract with TI. Plaintiff's general approach to this case was that he did not need to offer substantial evidence since the jury findings allegedly supported his position. Defendants' position basically was that the proof and jury findings were not sufficient to support a § 523(a)(2)(A) non-dischargeability complaint.

9. There was no testimony concerning the length of the state court jury trial. Apparently, there was no appeal of the state court judgment, nor objections to the wording of the state court charge.

*Conclusions of Law*

■ 1. Plaintiff had the burden to prove his case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ 2. A misrepresentation of intention can constitute fraud, although mere inability or failure to perform is not, in itself, sufficient evidence of fraudulent intent. 3 *Collier on Bankruptcy* ¶ 523.08 at 523–54 (15th ed. 1991). *Matter of Allison* (*Allison v. Roberts*), 960 F.2d 481 (5th Cir.1992); *Matter of Bercier,* 934 F.2d 689 (5th Cir.1991); *In re Roeder,* 61 B.R. 179 (Bankr.W.D.Ky.1986); *Garza v. Baker,* 139 B.R. 692 (Bankr.N.D.Ohio 1992); *Spoljaric v. Percival Tours,* 708 S.W.2d 432 (Tex. 1986); 41 Tex.Jr.3d, Fraud and Deceit § 11 (Not to fulfill promise); § 23 (Promises); § 24 (As constituting nonstatutory fraud); and § 109 (Knowledge; intent). The court in *In re Guy, supra* stated:

Therefore, a mere breach of contract by the debtor without more, does not imply existence of actual fraud for purposes of the exception to discharge under

§ 523(a)(2)(A). *In re Emery*, 52 B.R. 68, 70 (Bankr.E.D.Pa.1985). Accordingly, a mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. *In re Barker*, 14 B.R. 852, 567 [sic—857] (Bankr.E.D.Tenn.1981). *See also, 3 Collier on Bankruptcy*, para. 523.08, p. 523–47 (L. King 15th Ed.). That is, subsequent conduct contrary to a former representation does not necessarily render the original representation to be false. *In re Boese*, 8 B.R. 660, 662 (Bankr.D.N.Dak.1981). However, if a debtor enters into a contract intending not to comply with its terms and later defaults under that contract, such contract may provide a basis for exceptions to discharge on the grounds of fraud *if the other remaining elements are satisfied, In re Taylor*, 49 B.R. 849, 851 (Bankr.E.D.Pa.1985); *In re Fenninger*, 49 B.R. 307, 310 (Bankr.E.D.Pa.1985).

*In re Guy, supra* at 978.

■ 3. Aside from the underlying state court second amended petition, the state court charge and the state court petition, the live evidence produced by Plaintiff on July 6, 1992 was not sufficient to support a § 523(a)(2)(A) complaint. There was substantially no live testimony parroting any of the facts found in the jury's answers. There was no testimony or proof that Mr. and Mrs. Zachary were in a partnership whereby the fraud of one of them could be imputed to the other. *In re Luce*, 960 F.2d 1277 (5th Cir.1992). The underlying state court charge, when considered with the underlying state court petition and judgment, if sufficiently specific, would have been unrebutted *prima facie* evidence that Defendants were collaterally estopped, under 11 U.S.C. § 523(a)(2)(A), to contest all the damages, except exemplary damages, found in the state court's charge answers. Accord on attorney fees. *In re Church, supra*. Accord on § 523(a)(2)(A) as not authorizing exemplary damages. *In re Church, supra; In re McDonald*, 73 B.R. 877 (Bankr.N.D.Tex.1987); *In re Levy*, 951 F.2d 196 (9th Cir.1991), *cert. denied* —

U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586; *contra, In re Guy, supra*.

■ 4. A critical problem with the court's charge; however, is the use of the words Lamon Zachary "and/or" Barbara Zachary throughout. In answer to Question 2, the jury could have answered it as they did if they found:

(a) Lamon Zachary, Jr. made a fraudulent representation; or

(b) Barbara Zachary made a fraudulent representation; or

(c) Lamon Zachary, Jr. and Barbara Zachary made a fraudulent representation.

In order for the state court litigation to have collateral estoppel effect in a bankruptcy court, it must be clear that the factual determinations made by the trier of fact [the jury in the State Court Action] parallel the facts necessary to meet the federal standard of nondischargeability. What was established in the underlying state court action was the debt. What remains to be decided in the bankruptcy court adversary proceeding is whether that debt is dischargeable.

*In re Stover*, 88 B.R. 479, 483 (Bankr. S.D.Ga.1988). From the jury verdict, it is impossible to determine that both Mr. and Mrs. Zachary actually made a fraudulent representation or committed fraud, or which one of them actually made a fraudulent representation or committed fraud. *See, In re Stover, supra; In re Shear*, 123 B.R. 247 (Bankr.N.D.Ohio 1991). In *In re Shear, supra* at 249, the court stated:

According to *Spilman* [*v. Harley*], '[c]ollateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome.' 656 F.2d [224] at 228 [6th Cir.1981].

Plaintiff failed to meet his burden of proof that the judgment in question was nondischargeable.

5. The above and foregoing constitute the Court's Findings of Fact and Conclusions of Law. Where appropriate, a Finding of Fact shall be construed to be a Conclusion of Law, and *vice versa.*

EXHIBIT 1

Cause No. 90–12856–D

In the District Court

95th Judicial District

Dallas County, Texas

Elester Williams

v.

Lamon Zachary, Jr., Barbara Zachary and LZJ Super Cleaning Service, Inc.

CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5. You will not decide a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each jurors figures and dividing by the number of jurors to get an average. Do not do any trading on your answers, that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the Judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning com-

monly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No". Your answers to all questions that require other than a "Yes" or "No" answer must also be based on a preponderance of the evidence.

**"PREPONDERANCE OF THE EVIDENCE"** means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

**"PRODUCING CAUSE"** as used in this charge, is an efficient, exciting or contributing cause, which, in natural sequence, produced the damages Plaintiff complains of, if any. There may be more than one producing cause.

**"PROXIMATE CAUSE"** when used with respect to the conduct of the Defendant, means the cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person exercising ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

QUESTION NO. 1

Do you find that Lamon Zachary, Jr. and/or Barbara Zachary made one or more fraudulent representations which were a proximate cause of damages to Elester Williams?

You are instructed that fraud is established by showing:

1.  that there was a material representation;

2.  that the representation was false;

3.  that the person who made the representation knew it was false or made it

recklessly without any knowledge of its truth and as a positive assertion;

4.  that it was made with the intention that it be relied upon;

5.  that it was relied upon; and

6.  that the Plaintiff suffered injury as a proximate result of the fraudulent representation. For injury to be the proximate result of fraud it must be shown that, except for the fraud, such injury would not have occurred.

Answer "Yes" or "No."

ANSWER:  YES

If you have answered "Yes" to Question No. 1, then answer Question No. 2; otherwise, do not answer question No. 2.

QUESTION NO. 2

What sum of money, if any, would compensate Elester Williams for his actual damages which were proximately caused by the fraudulent representation/s found by you.

"Proximately caused" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer in dollars and cents or "none".

ANSWER:  $29,000

If you have answered "Yes" to Question No. 1, then answer Question No. 3; otherwise, do not answer Question No. 3.

QUESTION NO. 3

What sum of money, if any, should be assessed as exemplary damages?

"Exemplary damages" means an amount that you may, in your discretion, award as punishment and as a warning and example to others situated like Lamon Zachary, Jr. and/or Barbara Zachary from committing like offenses and wrongs in the future.

In determining the amount, you may consider: (1) the nature of the wrong, (2) the frequency of the wrongs, (3) the character

of the conduct involved, (4) the degree of culpability of the wrongdoer, (5) the situation and sensibilities of the parties concerned, (6) the extent to which such conduct offends a public sense of justice and propriety and (7) the size of an award needed to deter similar wrongs in the future.

Answer in Dollars and Cents, if any.

ANSWER: $700.00

QUESTION NO. 4

Do you find that Lamon Zachary, Jr. and/or Barbara Zachary agreed to pay Elester Williams for the work he performed?

Answer "Yes" or "No"

Answer: YES

If you have answered "Yes" to QUESTION NO. 4, then answer QUESTION NO. 5; otherwise, do not answer Question No. 5.

QUESTION NO. 5

Did Lamon Zachary, Jr., and/or Barbara Zachary fail to pay Elester Williams in full for the work he performed?

Answer "Yes" or "No"

Answer: YES

If you have answered "Yes" to QUESTION NO. 5, then answer QUESTION NO. 6; otherwise, do not answer Question No. 6.

QUESTION NO. 6

Was such failure to pay a producing cause of any damage to Elester Williams?

Answer "Yes" or "No"

Answer: YES

If you have answered "Yes" to QUESTION NO. 6, then answer QUESTION NO. 7; otherwise, do not answer Question No. 7.

QUESTION NO. 7

What sum of money, if any, should be awarded to Elester Williams for his damages.

Answer in Dollars and Cents or "None"

ANSWER: NONE

If you have answered "No" to both QUESTION NO. 1 and QUESTION NO. 4, then answer QUESTION NO. 8; otherwise, do not answer QUESTION NO. 8.

QUESTION NO. 8

Do you find that Elester Williams performed compensable work for Lamon Zachary, Jr. and/or Barbara Zachary?

You are instructed that a person performs compensable work if valuable services are rendered for another person who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work performed.

Answer "Yes" or "No"

Answer: N/A

If you have answered "Yes" to QUESTION NO. 8, then answer QUESTION NO. 9; otherwise, do not answer QUESTION NO. 9.

QUESTION NO. 9

What sum of money, if any, would fairly and reasonably compensate Elester Williams for the services performed.

Answer in Dollars and Cents or "None"

Answer: N/A

QUESTION NO. 11

Do you find that Lamon Zachary, Jr. and/or Barbara Zachary promised Elester Williams that he would be employed by them if the Zacharys obtained a contract with TI.

Answer "Yes" or "No".

ANSWER: YES

If you have answered Question No. 11 "Yes", then answer Question No. 12; otherwise, do not answer Question No. 12.

QUESTION NO. 12

Do you find that Lamon Zachary, Jr. and/or Barbara Zachary reasonably foresaw or should have foreseen that Elester Williams would rely on the promise inquired about in Question No. 11?

Answer "Yes" or "No".

ANSWER: YES

If you have answered Question No. 12 "Yes", then answer Question No. 13; otherwise, do not answer Question No. 13.

QUESTION NO. 13

Do you find that Elester Williams substantially relied to his detriment on the promise inquired about in Question No. 11?

Answer "Yes" or "No"

Answer: YES

If you have answered Question No. 13 "Yes", then answer Question No. 14; otherwise, do not answer Question No. 14.

QUESTION NO. 14

Was the failure to perform under such promise inquired about in Question No. 11 excused by the unavailability of Elester Williams?

Answer "Yes" or "No"

Answer: NO

If you have answered "No" to Question No. 14, and "Yes" to Questions No. 11, 12, and 13, then answer Question No. 15; otherwise, do not answer Question No. 15.

QUESTION NO. 15

What sum of money do you find would put Elester Williams in the position in which he would have been had he not acted in reliance upon the promise inquired about in Question No. 11?

Answer in Dollars and Cents, if any, or none.

ANSWER: $NONE

QUESTION NO. 16

What sum of money, if any, represents a reasonable and necessary attorney's fee for representation provided to Elester Williams in this case for the items of representation listed below?

Answer in dollars and cents, if any, for each item of representation.

a. The preparation and trial of this case.

ANSWER: $12,500.00

b. The preparation of an appeal or defense of an appeal to the Court of Appeals.

ANSWER: $3500.00

c. The preparation or defense of Writ of Error to the Supreme Court of Texas.

ANSWER: $2500.00

d. The preparation or defense of the appeal in the event a Writ of Error is granted by the Supreme Court of Texas.

ANSWER: $1500.00

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1. to preside during your deliberations;

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3. to write out and hand to the bailiff any communication concerning the case which you desire to have delivered to the judge;

4. to conduct the vote on the questions;

5. to write your answers to the questions in the spaces provided; and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

When you have answered all of the questions which you are required to answer, and the presiding juror has placed your answers in the spaces provided, and signed the verdict as presiding juror or obtained the signatures, if the verdict is not unanimous, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into Court with your verdict.

(s) Joe B. Brown
Judge Presiding

EXHIBIT B
### CERTIFICATE OF JURY

We, the jury, have answered the above and foregoing questions as indicated, and return these answers to the Court as our verdict.

(To be signed by the Presiding Juror only, if unanimous.)

(s) Donald F. Schrock Sr.
PRESIDING JUROR

(To be signed by those rendering the verdict, if not unanimous.)

