In re Janet Gibbs Skelley
HAYDEN, Debtor.

Edward V. Smith III, as Administrator for the Estate of Edward D. Hayden, Sr., Deceased, Plaintiff,

v.

Janet Gibbs Skelley Hayden,
Defendant.

Edward D. Hayden, Jr., William W. Hayden, Andrew T. Hayden, and Arline Hayden, Plaintiff,

v.

Janet Gibbs Skelley Hayden,
Defendant.

Bankruptcy No. 399–34263 RCM–11.
Adversary Nos. 99–3435, 99–3436.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 14, 2000.

Rosa R. Orenstein, Duncan McMillan, Dallas, TX, for Defendant.

Michael P. Massad, Jr., Dallas, TX, for Plaintiff 99–3435.

Robert G. Richardson, Robert P. Latham, Kimberly K. Taylor, Dallas, TX, for Plaintiffs 99–3436.

### MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

On January 18, 2000, in this 11 U.S.C. § 523 action, came on to be heard the

motions for summary judgment of Edward D. Hayden, Jr., William W. Hayden, Andrew T. Hayden, and Arline Hayden (collectively, the "Sons" or "Plaintiffs") against Janet Gibbs Skelley Hayden ("Debtor" or "Plaintiff"), and Debtor's counter motion for summary judgment against the Sons. The Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. On January 18, 2000, the Court made certain findings and conclusions on the record with respect to both motions for summary judgment and reserved decision on certain portions thereof. By partial summary judgment order entered February 16, 2000, this Court entered its order on such summary judgment motions. This opinion memorializes the findings and conclusions upon which such partial summary judgment order was based.

### Undisputed Facts

On February 16, 1983, Edward D. Hayden, Sr., established the Edward D. Hayden, Jr. Trust, the William W. Hayden Trust, and the Andrew T. Hayden Trust. Thomas Hayden was appointed as the trustee for the trusts.

On or about February 10, 1985, Edward D. Hayden, Sr. married Movant.

Edward D. Hayden, Sr. died on November 10, 1996, and his will was admitted to probate in Dallas County Probate Court No. Two (the "Probate Court") on December 12, 1996. Edward V. Smith, III (the "Administrator"), was appointed by the Probate Court as Administrator of the Estate of Edward D. Hayden, Sr. (the "Estate").

On or about November 18, 1997, the Administrator filed his Plaintiffs Original Petition for Declaratory Judgment in the Probate Court against the Sons, Frances Hayden, and Movant.

On or about December 17, 1997, Edward D. Hayden, Jr., William W. Hayden, Andrew T. Hayden filed in the Probate Court (a) their Cross–Claims of Defendants Edward D. Hayden, Jr., William W. Hayden, and Andrew T. Hayden against Debtor, and (b) their Third–Party Petition against, among others, the Edward D. Hayden, Sr. Irrevocable Trust, the Edward D. Hayden, Sr. Marital Trust.

Subsequently, Arline Hayden filed her Claim and Petition in Intervention against, among others, the Edward D. Hayden, Sr. Irrevocable Trust, the Edward D. Hayden, Sr. Marital Trust, and Movant.

In June 1998, a jury trial was held in the Probate Court to determine the claims of the Administrator, the Sons, and Movant. The issues to be determined were presented to the jury in the charge of the court (the "Jury Charge").

On February 17, 1999, the Probate Court entered its Final Judgment.

On or about May 17, 1999, Movant filed her notice of appeal of the Final Judgment.

On June 11, 1999 (the "Petition Date"), Movant filed for relief under Chapter 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

On September 21, 1999, the sons commenced this adversary proceeding by filing that certain Complaint to Determine Non–Dischargeability of Debt (the "Complaint") against Movant.

On October 21, 1999, Movant filed her Answer to the Complaint to Determine Non–Dischargeability of Debt.

On December 20, 1999, Debtor filed her Supplement to Answer to the Complaint to Determine Non–Dischargeability of Debt. Both the Sons and Debtor moved for summary judgment herein.

### Discussion

The sons' positive claims, as pled, are not limited to collateral estoppel claims arising by reason of the jury findings and state court judgment.

## Collateral Estoppel

Among other contentions, both sides argue that certain of the jury findings collaterally estop the other side from contentions or positions taken. In *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 601–02 (5th Cir.1998), the court stated:

Since the judgment against Miller was rendered *by a Texas state court, this court must apply Texas rules of preclusion. See* 28 U.S.C. § 1738 (full faith and credit statute); *Matsushita Elec. Indus. Co. Ltd. v. Epstein,* 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *In re Garner,* 56 F.3d at 679. "Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" *In re Garner,* 56 F.3d at 679 (quoting *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984)).

Further, Texas law requires that:

A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Id.* at 680 (quoting *Bonniwell,* 663 S.W.2d at 818). Miller and Abrams agree that requirement (3) is met, but disagree on the degree to which the issue of Miller's intent was litigated in and essential to the state court action.

The scope of the collateral estoppel doctrine is circumscribed by the particularized findings of the jury. *See Marine Shale Processors, Inc. v. EPA,* 81 F.3d 1371, 1379 (5th Cir.1996) (Higginbotham, J.). In this case, the jury specifically answered in the affirmative, with respect to Miller, the question: "Did any of the defendants misappropriate pro-

prietary information or make an improper use of the trade secrets of J.D. Abrams, Inc.?" Misappropriation was defined as the "wrongful taking and use of another's property." The jury answered in the negative whether Miller had acted with "malice mean[ing] ill will, spite, evil motive, or flagrant disregard for the rights of others." Based on these answers, we must decide whether the jury decided whether Miller acted with the mental state required to satisfy either § 523(a)(4) or § 523(a)(6). We conclude that it made no such decision. *In re Miller,* 156 F.3d at 601–02.

### Jury Findings Favorable to Sons Do Not Collaterally Estop the Debtor

The Sons must prove by a preponderance of the evidence that the debt is non-dischargeable. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir.1995).

In open court, the Sons' counsel admitted that findings on constructive fraud against Debtor (Issue 7) would not be a § 523 offense. (*See also* Issue 8). By the terms of § 523(a)(2)(A), actual, not constructive, fraud renders a debt nondischargeable. 11 U.S.C. § 523(a)(2)(A); *RecoverEdge L.P. v. Pentecost,* 44 F.3d at 1293; *In re Allison,* 960 F.2d 481, 483 (5th Cir.1992); *Atchley v. Stover (In re Stover),* 88 B.R. 479 (Bankr.S.D.Ga.1988).

The Sons' ultimate judgment is predicated upon Finding 5 (misappropriation of Debtor), Finding 7 (constructive fraud of Debtor), and Issue 8, *i.e.,* "what was the value of the assets, if any, subject to the misappropriation, conversion, *or* constructive fraud" of Debtor? (Emphasis added). None of the findings on these issues would collaterally estop the Debtor on any alleged § 523 offense. The answer to Issue 8 gives a dollar amount to the Sons upon which the ultimate state court judgment was based. From Issue 8, there

is no way of determining how much of same, if any, is attributable to misappropriation or constructive fraud. (The jury found there was no conversion by Debtor—Issue 6). *Matter of Schwager*, 121 F.3d 177, 183 (5th Cir.1997); *Williams v. Zachary (In re Zachary)*, 147 B.R. 881 (Bankr.N.D.Tex.1992). Additionally, the charge contained no definition of misappropriation. For misappropriation to constitute embezzlement, within the meaning of § 523(a)(4), among other things, there must be a finding of fraudulent intent. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602–603 (5th Cir.1998). Thus, these issues and judgment would also fail to show any quantifiable judgment in favor of the Sons, and binding on Debtor by reason of collateral estoppel.

Issues 1 and 2 are of no assistance to the Sons because Issue 1 inquires with respect to property of Edward D. Hayden, Sr. and not the Sons. Further, both issues are in the conjunctive and do not contain a specific § 523 finding that would collaterally estop the Debtor. *Matter of Schwager*, 121 F.3d 177; *Williams v. Zachary*, 147 B.R. 881.

### Res Judicata Bars Debtor's Counterclaim and Affirmative Defense on Paragraph 4 of Supplemental Answer

The Sons move for summary judgment with respect to Debtor's counterclaim by reason of *res judicata*.

■ In her counterclaim, Debtor raises certain claims against the Sons, arising out of a settlement agreement reached in the 1994 bankruptcy estate of Edward Hayden, Sr. According to Debtor's counsel in open court, on January 18, 2000, these matters were raised in a motion for summary judgment filed in probate court by the Debtor. The probate court did not grant the motion for summary judgment and did not submit such issues to the jury. Debtor further attempted to reopen such

bankruptcy case to assert such claims. The bankruptcy judge refused to reopen same, finding Debtor's remedy was to appeal such state court judgment. The matters contained in Debtor's counterclaim and Paragraph 4 of Debtor's supplement to answer are barred by *res judicata. In re Intelogic Trace, Inc.*, 200 F.3d 382 (5th Cir.2000). The four elements of *res judicata* are satisfied. The parties were identical in both suits, the prior judgment was rendered by a court of competent jurisdiction, there is a final judgment on the merits and the positive claims of Debtor, as noted, were involved in both suits. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), does not bar invocation of the doctrine of *res judicata* by Sons to preclude such affirmative claims of Debtor.

### Jury Findings Favorable to Debtor

#### Jury Finding 9

■ Debtor contends that jury Finding 9 bars the Sons from any § 523(a)(6) claim because the jury found, by clear and convincing evidence, that there was no malice of Debtor in connection with any misappropriation, conversion, or constructive fraud.

Since the § 523 burden of proof is preponderance of the evidence,[1] this finding does not collaterally estop the Sons.

### Debtor Not a Designated Trustee of Any of Sons' Trusts

■ Debtor was not a trustee of any of the Sons' trusts. Therefore, the Sons have no § 523(a)(4) fiduciary claim against Debtor acting as designated trustee of any of their trusts. The Sons have pled other types of complex relationships existing between the parties which may or may not give rise to some fiduciary-type relationship with Debtor within the meaning of § 523(a)(4).

---

1. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654.

### Jury Finding 6

Debtor contends that Jury Finding 6, finding no conversion by Debtor by collateral estoppel, bars any § 523(a)(4) embezzlement or larceny claims of the Sons. Jury question 6 reads:

Do you find that Janet Skelley converted to her own use and benefit any assets of the Sons' Trusts, Edward D. Hayden, Jr., individually, or the Estate?

*INSTRUCTION:*

The term "convert" means a taking of property without the owner's consent. In order to constitute a conversion, one party must, wrongfully and without authority, assume and exercise dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights. To constitute conversion, there must be intent on the part of one party to assert some right in the property, but such party may not escape liability by showing she acted in good faith or under a mistaken belief as to her own rights. It is not necessary that there be a physical taking of the property by the party, although there must be such active interference with the owner's right of property or control as will deprive him of the free use and enjoyment of his property.

The jury answered "we do not."

Federal law and not state law controls the meaning of "larceny" and "embezzlement" for § 523(a)(4) purposes. *See Clarendon Insurance Co. v. Barrett (In re Barrett)*, 156 B.R. 529, 533 (Bankr. N.D.Tex.1993), *affirmed* 1999 WL 184117, 1999 U.S. Dist. Lexis 4223, *appeal dismissed; In re Brady*, 101 F.3d 1165, 1172 (6th Cir.1996); *In re Littleton*, 942 F.2d 551, 555 (9th Cir.1991). Under § 523(a)(4), there is no requirement for the offense of larceny or embezzlement that debtor be acting in a fiduciary capacity. 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (15th ed. rev.1998); *In re Littleton*, 942 F.2d at 555.

Embezzlement is the fraudulent appropriation of property by a person to whom such property was entrusted, or in whose hands it has lawfully come. *In re Miller*, 156 F.3d 598; *RAI Credit Corp. v. Patton (In re Patton)*, 129 B.R. 113, 116 (Bankr.W.D.Tex.1991).[2] Varying elements have been required by courts in order to establish embezzlement. Texas bankruptcy courts have found that embezzlement requires a showing of three elements: (1) the debtor appropriated[3] funds, (2) the appropriation was *for the debtor's use or benefit,* and (3) the debtor did the appropriation with fraudulent intent. *In re Patton*, 129 B.R. at 116; *Federal Deposit Insurance Corp. v. Johnson (In re Johnson)*, 108 B.R. 129, 133 (Bankr.W.D.Tex.1989); *First Nat. Bank of Midlothian v. Harrell (In re Harrell)*, 94 B.R. 86, 91 (Bankr. W.D.Tex.1988); *International Brotherhood of Electrical Workers, Local Union No. 602 v. Bryant (In re Bryant)*, 73 B.R. 956, 959 (Bankr.N.D.Tex.1987); *see also Rogers v. Funk/Hansard, Inc. (In re Funk/Hansard)*, 1984 WL 6609 (M.D.Ga. July 27, 1984); *Skemp v. Michel (In re Michel)*, 74 B.R. 88, 90 (N.D.Ohio 1986).

Certain circuit courts have found that embezzlement requires a showing that: (1) property was rightfully in the possession of a nonowner, (2) the nonowner appropriated the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. *See First Delaware Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997) *citing In re Littleton*, 942 B.R. 551 (9th Cir.1991). *See also Miller v. J.D. Abrams,*

---

2. 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (15th ed.1999), citing Black's Law Dictionary (6th ed.1990), defines embezzlement as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."

3. "Appropriation" is defined by Black's Law Dictionary (7th ed.1999) as: "The exercise of control over property; a taking of possession."

*Inc. (In re Miller),* 156 F.3d at 602, where the Fifth Circuit defined "embezzlement" as the " 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.' "

After a trial on the merits in *In re Brady,* 101 F.3d 1165 (6th Cir.1996), the bankruptcy court held that debtor owed a nondischargeable debt of $40,000 to creditor under § 523(a)(2)(A) and (a)(4).

In affirming the bankruptcy court's finding of embezzlement, the Sixth Circuit court stated:

A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

In an argument similar to his denial that he obtained money under false pretenses, debtor asserts that he did not embezzle under section 523(a)(4) because the Bankruptcy Court did not find that he appropriated funds for his own benefit. As noted, however, the Bankruptcy Court found that debtor secretly took funds constituting part of creditor's individual share of the sale proceeds from an account held jointly by creditor and debtor and transferred those funds to a corporation controlled by debtor. Even if debtor did not deposit the $40,-000 directly into his own account, he disregarded creditor's wishes concerning the proper disbursal of the funds and instead used the money to improve the finances of a corporation which he controlled and of which he was the president. We therefore reject the implication by debtor that the "appropriation" requirement for embezzlement under section 523(a)(4) demands a showing that the debtor individually profited in an amount equal to that lost by the creditor. Regardless of whether debtor elected to deposit the property of creditor into his own bank account or into the account of his corporation, debtor fraud-ulently appropriated the property for his own use.

*Id.* at 1173 (citations omitted).

In the § 523(a)(2)(A) context, the Fifth Circuit has stated that the question is whether the debtor "benefits in some way" from the money, property, services, or credit.

The test under section 523(a)(2)(A), however, is not whether the debtor actually procured the money, property, services or credit for him or herself. 3 Collier on Bankruptcy ¶ 523.08[1] (15th ed.1991). Rather, the Code dictates that a particular debt is nondischargeable "[i]f the debtor benefits in some way" from the money, property, services or credit obtained through deception. *Century First Nat'l Bank v. Holwerda (In re Holwerda),* 29 B.R. 486, 489 (Bankr. M.D.Fla.1983) (holding that debtor who was a principal of a corporation " 'obtained money' within the meaning of § 523(a)(2)" when the creditor approved a loan to the corporation).

*In re Luce,* 960 F.2d 1277, 1283 (5th Cir. 1992).

■ Other than the manner in which the funds come into possession of a party, larceny does not differ from embezzlement. *See In re Patton,* 129 B.R. at 117; *Great American Insurance Co. v. Graziano (In re Graziano),* 35 B.R. 589, 594 (Bankr.E.D.N.Y.1983). Larceny has been defined as "the *fraudulent* and wrongful taking and carrying away of the property of another with the *intent to convert* it to the taker's use and with *intent to permanently deprive* the owner of such property." *RAI Credit Corp. v. Patton (In re Patton),* 129 B.R. 113, 116 (Bankr. W.D.Tex.1991), quoting *First National Bank of Midlothian (In re Harrell),* 94 B.R. 86, 90 (Bankr.W.D.Tex.1988). Collier on Bankruptcy defines larceny similarly: "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property *to the taker's use* without the

consent of the owner." 4 COLLIER ON BANKRUPTCY ¶ 523.10[2] (15th ed.1999) (emphasis added).[4] *See also Weinreich v. Langworthy (In re Langworthy),* 121 B.R. 903, 907 (Bankr.M.D.Fla.1990).

The Sons have also cited *Carey Lumber Co. v. Bell,* 615 F.2d 370, 376 (5th Cir. 1980), for the proposition that the Fifth Circuit does not require one to prove that the debtor diverted funds for her own use or benefit to determine a debt nondischargeable under § 523(a)(4). *Carey* involved § 523(a)(4)'s predecessor, 17(a)(4); *Id.* at 373 n. 1.

In *Carey,* Bell worked as the managing officer of Tom Bell Homes, a residential construction business. Seven construction mortgages executed by Tom Bell Homes, Inc. were the subject of foreclosure actions instituted in Oklahoma state court. Several creditors, including Carey, holding mechanics and materialmen's liens were joined as parties. In each action, Carey asserted claims against Bell alleging violations of the Oklahoma Lien Trust Statute.

Judgement was entered in favor of Carey in each case reciting that Bell had received construction funds in his capacity as manager of Tom Bell Homes, that Bell held the funds in trust, that Bell misapplied the funds, and, as a result, Bell was personally liable to Carey under the Oklahoma lien statute. Thereafter, Bell filed bankruptcy. Carey filed suit to determine dischargeability of the debts evidenced by the Oklahoma judgements. The court granted Carey summary judgement. Bell appealed, arguing among other points, that under 17(a)(4), a finding must be made that the bankrupt intentionally diverted, stole, or misappropriated funds for his own use.

In rejecting Bell's argument, the court stated:

There is some discussion (in cases not cited by Bell) regarding a requirement that funds misappropriated under section 17(a)(4) must have been diverted to the bankrupt's own personal benefit. But the issue is discussed in these cases only as it relates to whether a bankrupt individual should be held liable for the debts of a corporation of which he was once a director or officer. Some of the cases hold that a director may not be held liable for the debts of a corporation absent a showing of diversion of corporate funds for the bankrupt's personal use, for the apparent reason that without such evidence the bankrupt has not breached a fiduciary duty owed to the corporation and its creditors. The real issue in these cases, then, is whether the bankrupt breached a fiduciary duty such that he may be held liable for the debts of a corporation. That question is not present here; the existence of a fiduciary duty is undisputed, having been imposed by statute, and the failure to meet that duty is likewise undisputed. Thus under the circumstances of this case there was no need for Carey to show that Bell's use of construction mortgage funds was for his own personal gain. Even if there were such a requirement, Bell failed to come forth with any evidence that his use of the funds was not for his personal gain.

*Id.* at 376 (citations omitted).

Research of Fifth Circuit decisions revealed no other cases where the court discussed embezzlement or larceny under § 523(a)(4) and a requirement that the debtor convert property for her own use or benefit.

▇▇ In the first two sentences of the instruction in Issue 6, the definitions of "conversion" are geared toward an initial wrongful taking, or interference with an

---

**4.** "Convert" is defined by Black's Law Dictionary (7th ed.1999) as:

The wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with any chattel in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the chattel.

owner's control of his property, as opposed to embezzlement where the property is entrusted with the defendant or lawfully comes into his possession. The remainder of the instruction, therefore, needs to be construed in such context. Thus, the finding on Issue 6 would not bar the Sons embezzlement claim.[5]

The remaining issue is whether Jury Finding 6 bars any § 523(a)(4) larceny contention of the Sons. *See* the definitions of "larceny" cited above.

As indicated, generally larceny does require wrongful taking or carrying away with intent to convert to one's own use. However, the second part of the jury instruction permitted a conversion finding, even if there was not a taking, if there was active interference by Debtor with the Plaintiffs' rights in or control of the asset.

Regardless of why the jury found Debtor did not convert the Sons' assets, the stricter larceny definitional requirements were subsumed within the more lenient definition given. Accordingly, collateral estoppel arises from Issue 6 and would preclude the Sons from asserting any § 523(a)(4) larceny claim against the Debtor.

---

**5.** In view of this finding, it is unnecessary at this time to reach the issue of whether embezzlement requires appropriation for one's own benefit. That issue will be reserved for trial and any further briefing the parties may wish to submit on such issue.